By the Court. Woodruff, J.
The grounds which are urged in support of the present appeal are embraced within two principal questions—first, Whether the communication made by the defendant, and alleged to be slanderous, was a privileged communication ? and second, If it was in its nature privileged, then whether it should have been left to the jury to say whether it was maliciously made by the defendant?
In relation to the facts proved there is no dispute. The insurance company, of which the defendant was the president, having made an insurance of a building belonging to one Graves, were applied to for an alteration of the policy. The secretary, in reply, not only declined to make the alteration, but, in accordance with a privilege reserved in the policy, notified Graves that he declined insuring the building longer, and that he should'cancel the policy on the 3d of January then next. And in reply to a note of Graves, requesting him to state the reason why the company declined to insure longer, the secretary informed him that *541 if he would call at the office he would speak more fully in reference to the subject.
Graves accordingly called at the office of the company, saw the defendant (the president) and told him he had called to learn why the company declined to continue insuring his building in Brooklyn, and urged him to state the reasons. In answer, the defendant made the communication of which the plaintiff now complains. He (the defendant) inquired if the plaintiff was not occupying a portion of the building; and being answered in the affirmative, he stated that the company would not insure any building where Liddle was. Being asked why ? he said, “ The building where Liddle was, which the company had insured, was burnt down under very suspicious circumstancesadding, “ what would you think of a man being seen around the store the morning of the fire, at two or three o’clock in the morning, before the fire ? There was an old woman that lived in it, or in an adjoining building, who knew more about it than he did, and if she had not died, the company would not have paid the insurance.” The defendant further stated at the time, to the effect, that he did not know the plaintiff, personally, and should not know him if he saw him.
Under these circumstances, we have no hesitation in saying that the communication was in its nature a privileged communication. Not that the communication was absolutely and unqualifiedly privileged, so that it could not be the subject of inquiry ; but that the occasion and circumstances of the speaking were such that the defendant is prima fade protected in his communication, and there could be no recovery against him without proof that the words were falsely and maliciously spoken.
The communication related to the business of the applicant, Mr. Graves, in a particular wherein he was especially interested. If his tenant bore such a reputation that the company deemed it unsafe to insure premises occupied by him, or if the previous experience of the company had suggested such doubts, in regard to his conduct on a former occasion, as would render it proper to decline the insurance, it was of importance to Graves to know it; and it was the plain duty of the officers of the company when called upon and urged thereto to give their reasons, and why the occupancy by the plaintiff was objectionable. . It has often been *542 said that it would be impossible for the affairs of mankind to be conducted, if they who were interested directly in the character of those with whom they deal, or in whom they confide, might not seek and obtain such information and opinions as their neighbors possess without being hindered by the apprehension on the part of such neighbors that suits for slander could be sustained against them for acting in good faith and in entire frankness with those who consult them.
Communications respecting the character of a servant, made in response to an inquiry by one who proposes to employ such servant, are familiar illustrations of the principle. So of communications respecting the standing, character, and credit of one who proposes to deal, as customer, with another, made in answer to the inquiries of such other; and so of communications made to a public officer, leading, as the case may be, to the arrest of a supposed offender.
When a duty to the public, or to the party seeking inform- ' ation, requires that one should freely impart what information he has, or express the opinion his observation or experience has enabled him to form, he is to be protected, unless it is shown that he acted in bad faith, and under the influence of malice.
The rule is very distinctly and clearly laid down by Mr. Justice Parke, in Cockayne v. Hodgkisson, (5 Carr & Payne, 543), and was there applied to a case in which the plaintiff, being a gamekeeper, his employer had requested the defendant (his tenant) to communicate any thing he saw or heard, which was wrong, respecting game on his land.
Whether the facts above recited should have been submitted to the jury, is, however, the question which is most strenuously urged upon our attention by the plaintiff’s counsel. e Upon the proofs stated, the Judge, at the trial, ordered a dismissal of the complaint, or non-suit, on the ground that the plaintiff had failed to prove malice on the part of the defendant. And it is now insisted, that that was exclusively for the determination of the jury, and that the Court had no right to take the case from them, under any circumstances; that, if the communication be slanderous, then, though privileged, the plaintiff has always a right to go to the jury, and submit to them to find, upon *543 the mere face of the communication, whether it was maliciously spoken.
In this, we are quite clear, that the plaintiff is in error, though we fully assent to the general rules upon which he relies. The question of privilege relates to the occasion of the speaking, not to the matter of the communication. Where the facts which go to create the privilege are in dispute, those facts are to be inquired of by the jury; but when the facts are not controverted, the question of privilege is for the Court.
So, when the communication is, in its nature, privileged, the question whether the communication was made bona fide without malice, or was malicious, is a question for the jury; and the communication itself may be of such a character, and bear on its face such evidence of the malice of the defendant, that it may, and ought to be, submitted to the jury.
But the question of malice or no malice, in the defendant, is not otherwise a question for the jury, than questions of fact generally are, in all nisi prius trials. The issues of fact are for the jury. Hothing is more common than to say, that questions of fraud are peculiarly questions for the jury; and yet, this does not mean, that it is any more the duty of the Court to submit that question to the jury, unless the evidence be such as would warrant it, than it is to submit any other question of fact to them, without evidence to support it.
So, the sense in which words spoken were used and understood, is to be submitted to the jury; but not when they are clear and unambiguous, and the circumstances under which they are spoken create no doubt of their meaning.
Hor is it claimed, nor do we hold, that the mere fact that the communication is privileged, gives the Court the right to withdraw the case from the jury where, as in the present case, the privilege is not absolute. If there is any evidence of express malice, either on the face of the communication itself, or in the extrinsic proof, which would sustain a verdict for 'the plaintiff, if the jury should find that the words were spoken maliciously, then, and then' only, the plaintiff is entitled to have the question submitted to the jury; and this is the whole extent of the authorities relied upon by the appellant. And upon that view of the subject, non-suits have been frequently granted.
*544 A jury have no more right to find malice in the defendant, without sufficient evidence, than they have to find any other fact in the plaintiff’s favor, without proof.
And, if the Court can, and does, see, that a verdict against the defendant, upon that question, would be without evidence, it is the duty of the Court to non-suit. The general rule on this subject, is now well settled, as to issues of fact generally. (1 Wend. 376, and other cases cited in 4 Selden, p. 74; 7 Hill, 529.) And there is no ground whatever, for making the question of malice, in this action, an exception. Indeed, the Court of Appeals have gone so far as to say, that the submission of a question of fact to the jury, when there" is no evidence to support it, is error (Storey v. Brennan, 15 N. Y. Rep. 524); and it has often been decided, that a non-suit is proper, whenever a verdict for the plaintiff would be set aside, as against evidence, or as without evidence to support it.
. In this case, the party to whom the defendant’s conversation was addressed, was a dealer with the company of which the defendant was the president. He had an interest in knowing the reason why the company declined insuring his building, and especially in knowing if there was any thing in the character or conduct of the occupants of the building, which either rendered it unsafe, or increased the difficulty of effecting insurance. He applied for the information. Common fairness and frankness, and the confidence which should subsist between dealers, not only justified but required, that the defendant should state what he knew or believed on the subject. There is nothing in what he said that warrants even a suspicion that he did more than this; and so far from importing malice, the whole communication imports that he did no more; since he, at the time, disclaimed any personal acquaintance with the plaintiff, or that he should know him if he saw him.
We have no hesitation in concluding, that, if upon this evidence alone, the jury could have been induced to find that the words were maliciously spoken, it would have been our duty to set the verdict aside, as without any evidence to support it.
In the cases upon which the appellant relies, in which, although the communication was, in its nature, privileged, it was deemed proper to submit the question of malice to the jury, there was *545 either proof of extrinsic facts bearing upon that question, or the manner or terms of the communication, with its details, explanations and imputations, were such as reasonably created a doubt, whether the occasion was not used for the indulgence of spite or ill-will, or in order to accomplish some other and sinister purpose.
In Cockayne v. Hodgkisson, (5 Car. & P. 543,) the communication itself warranted a suspicion, that the object of the defendant was to supplant the plaintiff, and obtain for the defendant the plaintiff’s situation; and White v. Nichols, et. al. (3 How. U. S. Rep. 266,) is, we apprehend, in that respect, of the same character. There the communications were several. They were volunteered without solicitation. Their object was, apparently, to accomplish the removal of the plaintiff from office, and to secure the office for one of the defendants. The terms and style of the communications were vituperative in no slight degree. The Court, at the trial, had not only refused to permit them to be read, but refused to permit extrinsic proof that they were false, in fact, in particulars in which the statements were made as of the knowledge of the defendants. The actual decision upon the reversal, in that case, in no wise conflicts with the views above expressed. And although there are, in the language of the opinion given in the Court at bar, expressions that seem to countenance the proposition contended for by the present plaintiff, we are satisfied that, taken in connection with all the circumstances of that case, there is no reason to regard that case as in conflict with our views. In Coward v. Wellington, (7 Car. & P. 531,) there was -in the extrinsic facts proved, some slight reason to believe that the communication (which, in that case, was voluntarily made, without inquiry or solicitation,) was made in order to injure the defendant, but the case turned mainly on the inquiry, whether, in truth, any damage had resulted therefrom to the plaintiff, (whose wife was the subject of the alleged libel,) and whether her alleged dismissal from service was not merely colorable, and done for the express purpose of bringing the action; and a communication not invited by any previous inquiry, is far more liable to suspicion of malice, than one made in response to inquiries proper to be made, and to which it is the defendant’s duty to reply. (See Pattison v. Jones, 8 Barn. & Cres. 578.) In Rogers v. Clifton, *546 (3 Bos. & Pul.,) the plaintiff proved the communication to be false, under circumstances indicating that the defendant knew the falsehood of his own statements, and that the defendant acted officiously in making it.
On the other hand, cases are numerous in which the plaintiff has been non-suited. In Weatherstone v. Hawkins, (1 T. R. 110,) the verdict for the plaintiff, founded on the mere words of the communication, was set aside, and judgment ordered for' the defendant. In Child v. Affleck, (9 Barn. & Cres. 403,) a non-suit was ordered at the trial, and sustained after argument at bar. And in this State, in Vanderzee v. McGregor, (12 Wend. 545,) the communication being in its nature privileged, the Court determined the question, whether there was evidence sufficient to be submitted to the jury, on the question of malice, and ordered a non-suit, which was sustained.
The judgment "should be affirmed.
Judgment affirmed, with costs.