Settle order on notice.

---

(128 App. Div. 94.)

MORTON v. KNIPE.

(Supreme Court, Appellate Division, Second Department. October 9, 1908.)

1. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS—STATEMENT BY POLICE CAPTAIN.

A statement made by a police captain to a landlord that plaintiff's family were disorderly, and kept a disorderly house in an apartment rented from the landlord and situated in the captain's precinct, was prima facie privileged under the rule that a communication made in good faith upon any subject in which the person communicating has an interest or a duty is privileged, if made to one having a corresponding interest or duty, though containing matter which, without the privilege, would be actionable slander, though the duty be a moral or social, and not a legal, one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 130, 138–140.]

2. SAME—VOLUNTEERED INFORMATION.

That information claimed to be slanderous is volunteered does not necessarily preclude application of the principle of qualified privilege.

3. SAME—QUESTION FOR COURT.

Whether a statement sued on as slanderous was privileged is a question for the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 362.]

4. SAME—MALICE.

Malice is not presumed from the mere utterance of slanderous words, when the occasion is one of prima facie privilege; the burden being upon him spoken of to show that the speaker acted under motives other than those of duty.

5. SAME.

Any privilege of an occasion on which alleging slander is uttered does not protect one making the communication knowingly or carelessly in the

hearing of those not concerned, or using stronger language than is necessary or justified.

6. SAME—INSTRUCTIONS.

The statement of a police captain to plaintiff's landlord that her family were disorderly and kept a disorderly house, if incidental to the investigation of an alleged crime, was privileged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 130.]

Appeal from Trial Term, Kings County.

Slander action by Catherine Morton against William Knipe. From a judgment for plaintiff, and from an order denying a new trial defendant appeals. Reversed, and a new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Edward H. Wilson (James D. Bell, on the brief), for appellant.

Robert Stewart (Ralph G. Barclay, on the brief), for respondent.

JENKS, J. The action is for slander. The plaintiff has recovered a judgment for $1,250 for imputation of unchastity involved in the statement that her family were disorderly—were keeping a disorderly house in an apartment of a tenement. The version of the plaintiff is that the slander was spoken to her landlord by the defendant, then a captain of police over the precinct wherein these premises were situate. The proof consists of testimony by the plaintiff, corroborated in part by another witness, of admissions to her by the defendant that he had said the slanderous words, coupled with a reiteration thereof. The learned court instructed the jury that there were admissions in the answer which might make against the defendant. The defendant denied that he had ever made any statement to the effect that this family was disorderly, or kept a disorderly house. His testimony is that he had received complaint against the disorderly conduct of certain inmates of this tenement, that he went to the landlord and informed her of the complaint, and asked her permission for access to and passage through the house, so that he might investigate into the complaints.

The plaintiff's version presents the case of a statement made to a landlord by a superior police officer that the landlord's house, occupied by the plaintiff, situate within the officer's precinct, is a disorderly house. I think that the occasion of this communication is prima facie privileged. The general rule is stated in Byam v. Collins, 111 N. Y. 143, 19 N. E. 75, 2 L. R. A. 129, 7 Am. St. Rep. 726, as follows:

"A communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect obligation."

See, too, Coloney v. Farrow, 5 App. Div. 607, 39 N. Y. Supp. 460; Harwood v. Keech, 4 Hun (N. Y.) 389; Bradley v. Heath, 12 Pick. (Mass.) 163, 22 Am. Dec. 418.

I think that such an officer has both an interest and a duty to see to it that no house within his precinct should be kept or maintained as a disorderly house, and that there is a corresponding duty cast upon the landlord. It is not necessary to rest this conclusion upon general consideration of the public morals alone, inasmuch as section 322 of the Penal Code prescribes that the keeping of a disorderly house is a misdemeanor, and to let knowingly a house for such purposes, or to suffer it to be thus used, is likewise a misdemeanor. The view of the learned court was that the duty of the defendant was confined to procure the arrest of the offenders and to bring them into a court of justice, and that therefore he had no duty to perform in the direction of giving information to the landlord. But the duty to arrest for a crime is not necessarily exclusive of a duty to inform of a crime. And one whose primary or principal duty is to apprehend should not be precluded for that reason from the plea of prima facie privilege as to his statements. If this tenement, or any part thereof, was used for immoral purposes, the lease to the disorderly persons was terminable at the pleasure of the lessor, who could thereupon institute summary proceedings against them. Title 3, subc. 5, c. 334, p. 920, of the Laws of 1901.

I think that the occasion is prima facie privileged when a captain of police informs a landlord that his tenement is a disorderly house; nay, I think that the defendant, in his status as a citizen, might make such plea. In Liddle v. Hodges, 2 Bosw. (N. Y.) 537, it was held, per Woodruff, J., for the court, that a landlord had such an interest in knowing the character and reputation of his tenant that communications to him upon the character of his tenants were privileged. It is true that in that case there was inquiry by the landlord, but the rule as laid down is expressed by the learned judge as follows:

"When a duty to the public, or to the party seeking information, requires that one should freely impart what information he has, or express the opinion his observation or experience has enabled him to form, he is to be protected, unless it is shown that he acted in bad faith, and under the influence of malice."

The learned court seemed to draw a distinction between information sought and information volunteered. But the fact that the information is volunteered does not necessarily prevent the application of the principle of qualified privilege. Lewis v. Chapman, 16 N. Y. 369; Stuart v. Bell, 2 L. R. Q. B. Div. 341. Whether the occasion was privileged was a question for the court. Sickles v. Kling, 60 App. Div. 515, 69 N. Y. Supp. 944, and authorities cited; Byam v. Collins, supra.

The learned court, under exception, ruled that the occasion was not one of privilege, and I think that this was error prejudicial to the defendant; for, when the occasion is one of prima facie privilege, the presumption of malice does not arise from the mere utterance of the slanderous words. It is incumbent upon the plaintiff to show that the defendant was under motives other than those of duty. And mere evidence that the words were false does not raise the presumption of malice. Ormsby v. Douglass, 37 N. Y. 477; Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, 20 L. R. A. 440. When the learned court decided that there was no question of privilege in the case, it pro-

ceeded to the logical consequence of an instruction to the jury that if the defendant told the landlord that the plaintiff and her family were improper women, and if that were untrue, then the plaintiff was entitled to a verdict. Of course, the question of such privilege bears upon the occasion of the speech, and not to the surrounding circumstances, or to the nature of the communication; that is, the mere privilege of the occasion does not protect one who may have made the communication on the occasion knowingly or carelessly, in the hearing of those who are not concerned, or who may use stronger language than was necessary or was justified. Odger, Libel and Slander, citing Roberts v. Richards, 3 F. & F. 507; Padmore v. Lawrence, 11 A. & E. 380; Newell on Slander and Libel, pp. 477, 532. In the words of Woodruff, J., in Liddle v. Hodges, supra:

"And the communication itself may be of such a character, and bear on its face such evidence of the malice of the defendant, that it may, and ought to be, submitted to the jury."

As I have said, the defendant testified that, when he discussed the matter with the landlord, he then had the house under investigation in consequence of complaints, and he was seeking her permission for access to the premises in order to continue his investigation. In People v. Glennon, 175 N. Y. 45, 67 N. E. 125, the court, per Cullen, J., say:

"If having a well-grounded belief that the house was a house of prostitution, even though he had not witnesses sufficient to justify him in making his arrest, it was his duty, if he could obtain admission to the house peaceably and without violation of law, to enter it to see what its nature and character was. So, also, the conduct of the inmates, so far as could be observed in the street, though insufficient to justify the arrest, might well have required the application to a magistrate for a warrant; and it was his duty to diligently seek for evidence to present to the magistrate on such application."

If the communication as to the character of the premises of the plaintiffs, or even as to their character, was incidental to the investigation of an alleged crime, then, as was said in Klinck v. Colby, 46 N. Y. 434, 7 Am. Rep. 360:

"For the sake of public justice, charges and communications, which would otherwise be slanderous, are protected, if made bona fide in the prosecution of an inquiry into a suspected crime. Padmore v. Lawrence, 11 Ad. & Ellis, 380."

The learned court was requested to give this instruction to the jury, but answered, under exception, that, while this principle was true, it had no relation to this case. It seems to me that this bore upon the case, inasmuch as the version of the defendant was that all communications which he had with the landlord (out of which this charge of slander arose) were in the investigation of the character of the house and its inmates.

The judgment must be reversed, and a new trial granted, costs to abide the event. All concur.