FLORENCE KENT, as Guardian ad Litem of RONALD KENT, et al., Respondents, v. CITY OF BUFFALO, Defendant, and WBEN, INC., Appellant.

Fourth Department, February 18, 1971.

*Raichle, Banning, Weiss & Halpern* (*Frank G. Raichle* of counsel), for appellant.

*Moot, Sprague, Marcy, Landy & Fernbach* (*Courtland R. LaVallee* of counsel), for respondents.

DEL VECCHIO, J. P. Defendant appeals from a $5,000 jury verdict in an action for libel.

On Saturday, July 1, 1961, at about 7:00 P.M. an armed robbery was committed by four men. Three were quickly apprehended and taken to a Buffalo precinct. Plaintiff, walking home in the vicinity of the robbery, was picked up by the police, handcuffed and also taken to the precinct. While plaintiff was giving the police his name and address there, defendant's news photographer took a photographic film of these four persons in handcuffs. Subsequent to the filming one of the other three in handcuffs said that plaintiff was not involved in the holdup and he was released at 8:30 P.M.

The film portraying plaintiff in handcuffs was shown on the 11:00 P.M. TV news broadcast accompanied by the following audio description: " Buffalo Police have captured four men with sawed-off shotguns who held up the Hall Bakery tonight in Fillmore Avenue at Main Street. * * * The men, all of whom where wearing crude masks fashioned from undershirts, fled. But two detectives from the Crime Prevention Bureau captured three of them at gunpoint a short distance away. The other bandit hid in a tarpaulin-covered boat in the backyard of a nearby Fillmore Avenue home. A Colvin Station detective found him and he surrendered." The script also gave the ages, names and addresses of the four men. Plaintiff's name was not mentioned. The present action for libel followed.

The trial court charged that defendant could not be held liable for mere negligence or want of sound judgment; that to impose liability the jury must find that the defendant acted with malice, which might consist of publishing a libel with such negligence and carelessness as to indicate a wanton or reckless disregard of the rights of plaintiff. The jury returned a verdict for plaintiff in the amount of $5,000 punitive damages but no compensatory damages. In this state of the record, plaintiff is entitled to the benefit of every favorable inference which can reasonably be drawn from the facts proven. (*Owen* v. *Rochester-Penfield Bus Co.*, 304 N. Y. 457, 459.)

This appeal presents three questions: (1) Was the publication false? (2) May punitive damages be awarded without compensatory damages? (3) Does the evidence contained in the record support a finding of malice?

The court is unanimous in holding that the publication was false and that punitive damages may be awarded without compensatory damages. The dissenting Justice votes to reverse and dismiss the complaint on the ground that as a matter of law the record does not support a finding of malice. We disagree for the following reasons:

The law is well settled that malice does not mean personal ill-will alone. "It may also mean such a wanton and reckless disregard of the rights of another as is ill-will's equivalent. This means more than mere negligence or want of sound judgment." (*Pecue* v. *West*, 233 N. Y. 316, 322.) "The equivalent of actual malice may consist of publishing a libel with such negligence and carelessness as to indicate a wanton or reckless disregard of the rights of others". (*Frechette* v. *Special Magazines*, 285 App. Div. 174, 175; see, also, *Smith* v. *Matthews*, 152 N. Y. 152, 158.) "The question of good faith, belief in the truth of the statement, and the existence of actual malice, remains for the jury." (*Hamilton* v. *Eno*, 81 N. Y. 116, 122.)

In the light of these decisions and the proof received upon the trial it would be error to dismiss the complaint. (*Wessel* v. *Krop*, 30 A D 2d 764.) We see no basis for disturbing the verdict.

The jury could, and apparently did, find that defendant's photographer made no inquiry with regard to any of the persons in handcuffs. He testified that the normal procedure was to ascertain what was happening and to identify the persons filmed, but on this occasion he could not recall that he made any inquiry. Customarily, he would thereafter edit the film and prepare a brief outline for the news editor, identifying the persons in the film. The Saturday night news editor, whose task it was to write the script accompanying the film, had seen the July 1 film before preparing the script. He testified that the normal procedure was to view the film and discuss it with the photographer and verify the identity of the people in the film prior to preparing the script. In the present case, at the time the news editor prepared the script he had the correct names, addresses and ages of the four persons who participated in the robbery. He also knew that the police had picked up the fourth robber who was hiding under a tarpaulin of a boat near the scene and referred to this in the script.

The news director for the Sunday broadcast testified that normal procedure involved reviewing the previous night's news-

casts, reading the papers, phoning police and other potential sources of news before preparation of the newscast. Prior to writing the newscast for July 2, he did in fact read the newspaper story which contained the names and photographs of the four participants in the robbery. Despite this however, the film shown the night before was repeated as part of the Sunday noon news program with a script again giving the names and addresses of the actual robbers without naming plaintiff. The director assumed that the film was a true portrayal of the four persons charged, although he could not recall whether he had actually looked at the film before it was rerun to verify whether the four persons shown in the newspaper were the four shown in the film.

To summarize, the video and audio portions of the telecasts, viewed as components of a television narrative of a news story, portrayed the four persons in the film as the perpetrators of the robbery. This was false both times it was published because one of the persons shown was the innocent plaintiff, a fact which should have been known to defendant. Its failure to be aware thereof could well have been found to be due to its reckless or careless publication. Its statement '' four bandits armed with shotguns who held up the Hall Baking Company * * * were captured '', while showing plaintiff's picture (with three others) accused him of robbery without justification. While defendant might have called him a suspect, it did not do so but in effect said that he was one of the robbers. It is noteworthy that the telecast by another TV station did not include plaintiff's picture.

Plaintiff was released at 8:30 P.M., and defendant's failure to learn of his release in time to correct its 11:00 P.M. telecast and the noon telecast on the following day could also have been found to have been due to its recklessness or carelessness. The news editor testified that defendant's normal and established procedure was to verify the identity of the people in the film. This it failed to do, even after it had the names and addresses of the true culprits and after one of the writers had seen newspaper photographs of the actual robbers with their names printed underneath. Upon these facts the jury could have found, and implicit in the verdict is a finding, that defendant recklessly disregarded the normal and established procedures to insure the accuracy of the stories, and therefore a reckless disregard of the rights of plaintiff.

Furthermore, while defendant's activities and lack thereof might have been found to be mere negligence or want of sound judgment, we cannot say that upon the precise facts before us the jury's finding that defendant's conduct showed a reckless

disregard of plaintiff's rights is against the weight of the evidence. (*Farrington* v. *Star Co.*, 244 N. Y. 585.) "The plaintiff in a libel action has the burden of establishing actual malice to support a claim for punitive damages (*Krug* v. *Pitass*, 162 N. Y. 154, 160), and may establish such malice by proof of reckless or careless publication, as where the publisher of a newspaper makes no attempt to verify or investigate the truth or falsity of an article of news before publication." (*Wiener* v. *Long. Is. Daily Press Pub. Co.*, 286 App. Div. 1108; *Rushlow* v. *Plattsburgh Republican Pub. Co.*, 262 App. Div. 931.)

*Garrison* v. *Louisiana* (379 U. S. 64) and *St. Amant* v. *Thompson* (390 U. S. 727) cited by the dissent, are cases involving public officials and public figures, and the rule of law set forth in those cases is not applicable to actions for libel brought by a private individual. (Cf. *Curtis Pub. Co.* v. *Butts,* 388 U. S. 130; *Pauling* v. *National Review,* 22 N Y 2d 818.)

We adopt the reasoning and conclusion ably expressed by the Trial Judge in his decision denying the motion to set aside the verdict that punitive damages may be awarded in the absence of a finding of actual damages. (*Clark* v. *Variety, Inc.,* 189 App. Div. 462; see, also, *Toomey* v. *Farley,* 2 N Y 2d 71; *Reynolds* v. *Pegler,* 123 F. Supp. 36, affd. 223 F. 2d 429, cert. den. 350 U. S. 846.)

The judgment and order should be affirmed.

MOULE, J. (dissenting). Plaintiff and three others, who had been arrested and charged with robbery, were photographed in a police station by defendant's photographer, but their names were not obtained. Plaintiff was later released and another suspect arrested. Defendant, not knowing that plaintiff had been released, obtained the names of the persons then under arrest and used them in connection with a newsfilm that same evening and the following day at noon.

Defendant's photographer recalled going to the police station and taking the picture. He did not remember whether he asked questions although it was routine to do so. He followed normal news procedures used by defendant and other television stations. The persons whose pictures he took were those detained by the police in the robbery. Defendant's news editor prepared a transcript for the telecast. Since the story broke on a Saturday night, it was customary to use the film on Sunday at noon also. The person in charge of the station on Sunday took the picture as it was, which was customary, and not having obtained any new information about the robbery, used the picture. As recognized by the majority, defendant could not be held liable for

mere negligence but only for reckless disregard of the plaintiff's rights.

Although it does not appear that defendant failed to follow its normal and established procedures, the fact that it might not have done so does not show that it acted with reckless disregard of the truth. Failure to follow one's own procedures is not by itself sufficient even to show negligence. (*Danbois* v. *New York Cent. R. R. Co.,* 12 N Y 2d 234; *Valentino* v. *Johnson Corp.,* 23 A D 2d 727; *Taddeo* v. *Tilton,* 248 App. Div. 290.)

Reckless or wanton conduct means publication of a falsehood "with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co.* v. *Sullivan,* 376 U. S. 254, 280.) The cases cited by the majority on the question of recklessness are distinguishable on their facts. In *Farrington* v. *Star Co.* (244 N. Y. 585) for instance, defendant newspaper went out of its way to write up a sensational story and erroneously used plaintiff's picture in it, under circumstances where it knew that it was doubtful that it had the right picture.

The use of plaintiff's picture cannot be said to have been "with the high degree of awareness of [its] probable falsity demanded" (*Garrison* v. *Louisiana,* 379 U. S. 64, 74) nor could defendant have "in fact entertained serious doubts as to the truth of [its] publication." (*St. Amant* v. *Thompson,* 390 U. S. 727, 731.) An inference of gross carelessness cannot be drawn from the fact that a mistake was made, and since the record contains no evidence of reckless conduct, the verdict should be set aside and the complaint dismissed. (*Frechette* v. *Special Magazines,* 285 App. Div. 174.)

Gabrielli and Henry, JJ., concur with Del Vecchio, J. P.; Moule, J., dissents and votes to reverse and dismiss the complaint, in opinion.

Judgment, insofar as appealed from, and order affirmed, with costs.