557 F.2d 300
 James F. REGAN, Plaintiff-Appellant,
v.
Joseph F. SULLIVAN, George Van Nostrand, Francis R. Jules,
and Donald J. Grattan, Defendants-Appellees,
and
John Callaghan, Individually and as a member of The New York
City Police Department, James M. Harkins, Individually and
as a member of The New York City Police Department and
Howard Greenwald, Individually and as a member of The New
York City Police Department, Defendants.
 No. 526, Docket 76-6139.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 25, 1977.
Decided May 25, 1977.
 
 David M. Brodsky, New York City (Joan Ross Sorkin, Atty., Guggenheimer & Untermyer, New York City, of counsel), for appellant.
 Prosper K. Parkerton, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., E.D.N.Y., Bernard J. Fried, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellees.
 Before MANSFIELD, VAN GRAAFEILAND, Circuit Judges, and MISHLER, Chief Judge.*
 MANSFIELD, Circuit Judge:
 
 
 1
 On January 29, 1975, over one year after his arrest on November 15, 1973, appellant brought suit in the Eastern District of New York against state and federal law enforcement officers, alleging a violation of his Constitutional rights on the basis of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), a conspiracy to deprive him of the equal protection of the laws under 42 U.S.C. § 1985(3), and various acts tortious under New York law. On the motion of the federal defendants Judge Neaher dismissed the Bivens claim on the ground that it was time-barred under N.Y.C.P.L.R. § 215(1), which provides that an action against "a sheriff, coroner or constable" based on conduct in his official capacity must be commenced within one year. The claim under § 1985(3) was dismissed for failure to allege discriminatory animus, and the pendent state claims as time-barred under N.Y.C.P.L.R. § 215(3), which provides a one-year period for actions based on intentional torts. Because we find N.Y.C.P.L.R. § 215(1) inapplicable to the instant suit and because New York's "single publication" rule does not extend to part of appellant's state libel claim, we reverse in part and remand for further proceedings.
 
 
 2
 Appellant's complaint joined as defendants the United States, an Assistant United States Attorney (Edward Boyd), three special agents of the Federal Bureau of Investigation (Joseph F. Sullivan, George Van Nostrand, and Francis R. Jules), a U.S. Customs Agent (Donald Gratin), and three members of the New York City Police Department (John F. Callaghan, James M. Harkins and Howard Greenwald), alleging violations of his Constitutional and civil rights and the commission of certain common law torts. Specifically, he alleged that the defendant law enforcement officers had, without probable cause, arrested and searched him and otherwise violated his Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendment rights, that defendant Boyd had authorized the filing of a criminal complaint against him, and that as a result of the defendants' actions there had appeared newspaper articles stating that he had been arrested and charged with robbing a warehouse. In addition to his federal claims under the Constitution and 42 U.S.C. §§ 1983 and 1985(3), appellant requested that the court exercise pendent jurisdiction over state tort claims for slander and defamation, invasion of privacy, false arrest, abuse of process, and malicious prosecution.
 
 
 3
 The district court, in an order not on appeal here, dismissed appellant's claims against the United States on the ground of sovereign immunity and against Boyd on the ground of prosecutorial immunity. The remaining federal defendants then moved to dismiss appellant's Bivens and state tort law claims as time-barred and his claim under 42 U.S.C. § 1985(3) for failure to allege discriminatory animus. The district court granted their motion, certifying its decision to this court as a final order under Rule 54(b) of the Federal Rules of Civil Procedure, from which plaintiff appeals. The suit against the city police officers continues below.DISCUSSION
 
 
 4
 Appellant first argues that the district court applied the wrong New York statute of limitations to his Bivens claim or, in the alternative, that we should formulate a federal statute of limitations for Bivens claims based on the Federal Tort Claims Act, 28 U.S.C. §§ 2401(b) & 2680(h).
 
 
 5
 Generally where "there is no specifically stated or otherwise relevant federal statute of limitations . . ., the controlling period would ordinarily be the most appropriate one provided by state law." Johnson v. Railway Express Agency, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). "A special federal statute of limitations is created, as a matter of federal common law, only when the need for uniformity is particularly great or when the nature of the federal right demands a particular sort of statute of limitations." Chevron Oil Co. v. Huson, 404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1971). The threshold question here, therefore, is whether there is any special reason for the formulation or adoption of such a uniform period to govern suits against federal employees.
 
 
 6
 If a federal statute prescribing a longer period of time than those specified by some otherwise-applicable state statutes of limitations existed, there would be public policy advantages to borrowing the federal statute and applying it to a Bivens-type action. A short limitations period, such as one year, might significantly interfere with ongoing criminal investigations by the FBI and other federal law enforcement agencies. Since one of the most hotly contested issues in any Bivens action is likely to be whether the defendant officers acted with "good faith and reasonable belief in the validity of the arrest and search" Bivens, 456 F.2d 1339, 1348 (2d Cir. 1972) (on remand), once a suit is filed discovery will probably be attempted to determine whether the officers had probable cause for their actions. If the criminal investigation is still going on, revelation of the FBI's sources may seriously jeopardize the agency's investigatory efforts. Here, for example, the Attorney General has specifically ordered that the probable cause for appellant's arrest not be revealed. The defendant agents therefore find themselves in the awkward, if not untenable, position of having to argue that it is too early for this suit to go forward for discovery purposes, but too late for it to go forward for limitations purposes. Were we to apply a short state limitations period to Bivens actions, every person subject to a challengeable search or arrest would have to file suit shortly thereafter in order to preserve his rights, and considerable discovery pressures might thereby be placed on federal criminal investigations. A longer limitations period, by contrast, would allow more Bivens plaintiffs to wait until the relevant criminal investigations had run their course before bringing suit. Moreover, once the entire picture was disclosed, fewer Bivens cases might be brought.
 
 
 7
 The only federal statute that might arguably be applied to a claim of the present type is the Federal Tort Claims Act, 28 U.S.C. § 2680(h), which was amended, effective March 16, 1974, to render its two-year limitations period, 28 U.S.C. § 2401(b), applicable to Bivens -type claims against the United States. However, the amendment does not apply to the claims here since they are against federal employees, and, even if they had been asserted against the United States, they arose prior to the effective date of the amendment. Moreover, under the amendment such claims against the United States must be presented in writing to the appropriate federal agency within two years of the accrual of the cause of action and the action must be brought within six months of the denial of the claim by that agency, 28 U.S.C. § 2401. Were we to establish a limitations period of two years or less for Bivens claims against federal employees, a complainant asserting his claims shortly before the expiration of the period would have to file an action against the employee while filing a claim with the agency. He could not, however, join the agency as a defendant in his lawsuit until it denied his claim. 28 U.S.C. § 2675. Presumably the action would meanwhile have to be stayed. If and when the agency denied the claim, permission would then have to be obtained to join the agency as a defendant. Otherwise two separate suits would be required. The employee might be found liable in one but judgment be rendered for the agency in the other, which would run contrary to the purposes of § 2680(h). The problems presented are thus somewhat analogous to those presented in McAllister v. Magnolia Petroleum Co., 357 U.S. 211, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), where the Court held that, in view of the practical necessity of joining a seaman's unseaworthiness and Jones Act claims in one action, a state could not apply a shorter period applicable to one when it would have the effect of barring the other. A short Bivens statute would similarly deprive plaintiffs of the full benefits of 28 U.S.C. § 2401.
 
 
 8
 Turning to New York law, there are four possibly applicable sections of New York's Civil Practice Law and Rules:
 
 
 9
 (1) § 214(2), which provides a three-year limitations period for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215."
 
 
 10
 (2) § 215(1), which provides a one-year limitations period for "an action against a sheriff, coroner or constable, upon a liability incurred by him doing an act in his official capacity . . .."
 
 
 11
 (3) § 215(3), which provides the same short period for intentional common law torts.
 
 
 12
 (4) § 213(1), which provides a six-year period for "an action for which no limitation is specifically prescribed by law."
 
 
 13
 Appellant's action would be timely if either § 214(2) or § 213(1) applied. The question, therefore, is whether either of the one-year provisions, §§ 215(1) or 215(3) applies.
 
 
 14
 The district court held that § 215(3), which provides a one-year period for common law intentional torts and for violations of a statutory right to privacy,[1] is not applicable to a Bivens claim brought directly under the Constitution. We agree. As the Supreme Court stated in Bivens, 403 U.S. 388, 394, 91 S.Ct. 1999, 2003, 29 L.Ed.2d 619 (1971):
 
 
 15
 "The interests protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile."
 
 
 16
 Although we have never explicitly considered this issue, in Ortiz v. LaVallee, 442 F.2d 912 (2d Cir. 1971), where it was alleged that prison officials had beaten and stabbed the plaintiff, we applied the three-year limitation provided by § 214(2) rather than the one-year period specified by § 215(3). Similarly, in Kaiser v. Cahn, 510 F.2d 282 (2d Cir. 1974), we applied § 214(2) to a claim that a prosecutor had deliberately denied the plaintiff a fair trial by maliciously releasing trial evidence to the press beforehand. Other circuits have held one-year common law tort statutes similar to § 215(3) inapplicable to similar federal claims against police officers. See Smith v. Cremins, 308 F.2d 187 (9th Cir. 1962); Glasscoe v. Howell, 431 F.2d 863 (8th Cir. 1971). The Cremins court, 308 F.2d at 190, stated:
 
 
 17
 "The elements of an action under Section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability. As Mr. Justice Harlan recently suggested, 'a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.' "Although we agree with the district court's holding that § 215(3) is inapplicable, we cannot agree that appellant's Bivens claim against federal law enforcement officers is analogous to a claim against "a sheriff, coroner or constable" under § 215(1), which must be filed within one year. Appellees apparently concede that the language of § 215(1) cannot be broadly read to cover all, or even most, law enforcement officers. However, they offer a rather circuitous argument in support of their contention that it should apply to FBI and U.S. Customs agents. First they assert that indemnification is provided for all police officers other than sheriffs, constables and coroners by N.Y. General Municipal Law §§ 50-j and 50-k. A suit against a police officer so indemnified is considered a suit against the municipal corporation itself and is governed by the statute of limitations set forth in N.Y. General Municipal Law § 50-i. Since New York law does not require municipalities to indemnify FBI and U.S. Customs agents and since federal law did not at the time provide such indemnification, the argument goes, such federal officers are more closely analogous to sheriffs and should therefore have the benefit of the shorter period prescribed by § 215(1).
 
 
 18
 Our review of the history and background of § 215(1) shows that it represents an amalgam of (1) former § 51(1) of the Civil Practice Act (which provided a one-year limitations period for actions against sheriffs and those in line to hold the office of sheriff and marshals, in order to protect their sureties)[2] and (2) former § 49(2) of the Civil Practice Act (which had prescribed a three-year period to govern actions against constables).[3] Nothing in the history indicates a legislative intent to extend the benefits of § 215(1) to law enforcement officers other than those specifically named. Moreover, although some law enforcement officers employed by municipalities were required to be indemnified as to some claims at the time of appellant's arrest and to that extent suits against them were treated for statute of limitations purposes as suits against the municipalities employing them,[4] which were governed by § 50-i,[5] Hahin v. City of Buffalo, 41 Misc.2d 1018, 246 N.Y.S.2d 917 (Sup.Ct. Erie Cty. 1964); Rusch v. Karpick, 20 A.D.2d 954, 248 N.Y.S.2d 451 (4th Dept. 1964); Fitzgerald v. Lyons, 39 A.D.2d 473, 336 N.Y.S.2d 940 (4th Dept. 1972); Sadler v. Horvath, 44 A.D.2d 905, 357 N.Y.S.2d 558 (4th Dept. 1974); Cooper v. Morin, 50 A.D.2d 32, 375 N.Y.S.2d 928 (4th Dept. 1975), this by no means extended § 50-i to all suits against such officers for personal injuries or property damage caused by them in the performance of their duties. Indeed, at the time of appellant's arrest the only types of claims for which law enforcement officers employed by municipal bodies were indemnified were claims involving vehicular negligence. N.Y. Gen. Municipal Law § 50-c. As to all other claims against such officers and as to claims against all officers not employed by such municipal bodies, the ordinary limitations provisions were applicable.[6] Although indemnification of New York law enforcement officers for their torts has since been extended in certain respects by statute, the extensions post-date the conduct at issue here or are inapplicable for other reasons.[7]
 
 
 19
 Thus the picture that emerges of the limitations provisions applicable to actions against law enforcement officers under New York law is considerably more complicated than appellees would have us believe. Sheriffs, constables and coroners are governed by N.Y.C.P.L.R. § 215(1). With some exceptions not pertinent here for claims against some law enforcement officials which are governed under certain conditions by N.Y. General Municipal Law § 50-i, all other law enforcement officers a complete listing of such positions in New York is given in N.Y. Criminal Procedure Law §§ 1.20(33) & (34) would appear also to be governed by the general limitations provisions. Although we have not specifically considered this question before, we did apply § 214(2), and not § 215(1) in Romer v. Leary, 425 F.2d 186 (2d Cir. 1970), an action against the police commissioner of New York City. Similarly, in Ortiz v. LaVallee, 442 F.2d 912 (2d Cir. 1971), we applied § 214(2) in a suit against state prison officers, who along with constables, are defined as "peace officers" in N.Y. Criminal Procedure Law § 1.20(33). Compare Fine v. City of New York, 529 F.2d 70 (2d Cir. 1975).
 
 
 20
 Thus arguments in support of the application of § 215(1) to this case must be rejected. It simply is not true that all police or peace officers other than sheriffs, constables, and coroners are covered by N.Y. General Municipal Law § 50-i through indemnity arrangements. The efforts to analogize federal officers to sheriffs on the assumption that they are not indemnified by New York municipalities or the federal government does not withstand analysis. The reason for the short statute governing actions against sheriffs, constables and coroners is to protect their sureties, and the reason certain other officers are given the benefit of the municipal limitations statute is to protect the indemnifying municipalities. Neither of these special considerations applies to federal officers. No purpose would be served in adopting a rule that would require us in every Bivens case to decide whether the particular type of federal officer involved is more closely analogous to a sheriff, a large-city policeman, a small-city policeman, a county police officer, or some other state law enforcement officer and to decipher the special limitations provisions relevant to each, particularly where the distinctions drawn by New York law are completely irrelevant to federal officers.
 
 
 21
 The federal defendants in this case are therefore entitled only to the benefits of either the three-year limits of § 214(2) or the six-year limits of § 213(1). Since New York law provides at least a three-year statute of limitations for the Bivens claims asserted in this case, thereby satisfying the federal interest in a longer statute, we decline here to formulate a general federal statute of limitations for Bivens claims.[8] Accordingly, we reverse the district court's dismissal of appellant's Bivens claim as time-barred.
 
 
 22
 Appellant next challenges the dismissal of his claim based on 42 U.S.C. § 1985(3). In Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Court held that a necessary element of an action under § 1985(3) was a "racial, or perhaps otherwise class-based, individiously discriminatory animus behind the conspirators' action." An examination of appellant's amended complaint reveals that nowhere is such a discriminatory animus alleged. The closest that the complaint comes to attributing any motive to the defendants is paragraph 17, which provides:
 
 
 23
 "All of the foregoing was done, was caused to be done, and is being done and is being caused to be done by virtue of a conspiracy by said defendants without just cause, unlawfully, and unreasonably and contrary to law."Whatever may be the scope of § 1985(3),[9] such an allegation is not sufficient to bring appellant's suit within its bounds. Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969); Bricker v. Crane, 468 F.2d 1228 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973); Waits v. McGowan, 516 F.2d 203 (3d Cir. 1975); Hughes v. Ranger Fuel Corp., 467 F.2d 6 (4th Cir. 1972); Lesser v. Braniff Airways, Inc., 518 F.2d 538 (7th Cir. 1975); Arnold v. Tiffany, 487 F.2d 216 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); Ward v. St. Anthony Hospital, 476 F.2d 671 (10th Cir. 1973).
 
 
 24
 Finally, appellant challenges the district court's dismissal of his defamation claims.[10] His complaint alleged, first, that the defendants' actions led to newspaper articles which appeared on November 17, 1973, reporting his arrest and, second, that his picture was included in the defendants' "rogues' gallery" and shown to various persons from time to time. The district court held that under New York's "single publication" rule both of appellant's claims accrued on November 17, 1973, and were therefore barred by his failure to bring suit until January 29, 1975. The court further held that the showing of appellant's picture as part of a "rogues' gallery" does not state a claim for libel under New York law.
 
 
 25
 We agree that appellant's libel claim based on the publication of the newspaper articles is barred by the statute limitations. Although appellant argues that his suit should not be barred if he suffered damages from that publication within a year of bringing suit, he has alleged no such damages. As to this aspect of the district court's holding, therefore, we affirm.
 
 
 26
 To the extent that the district court held that the newspaper articles and the showing of appellant's picture in the "rogues' gallery" together constituted a "single publication" under Gregoire v. C. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45 (1948), however, we disagree. That rule is clearly intended to apply only to multiple copies published as part of a single printing, not to separate printings of differing publications which form the basis of separate libel claims. As the Gregoire court stated the rule:
 
 
 27
 "(T)he publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and . . . the applicable Statute of Limitations runs from the date of that publication."
 
 
 28
 Id. at 123, 81 N.E.2d at 47. Since the various showings were alleged to have taken place during the summer or fall of 1974 and at other times unknown to appellant, it was error to dismiss this claim as time-barred on a motion to dismiss.
 
 
 29
 The court further held, however, that the showing of appellant's picture as part of a "rogues' gallery" fails to state a cause of action. We cannot agree. A false statement that one is a criminal or has committed or been arrested for the commission of a crime is libelous per se in New York. Moore v. Francis, 121 N.Y. 199, 203, 23 N.E. 1127 (1890); 34 N.Y.Jur., Libel & Slander §§ 8-13 (1964). Moreover, it is clear that publication of a photograph can constitute libel. Metzger v. Dell Publishing Co., 207 Misc. 182, 136 N.Y.S.2d 888 (Sup.Ct. N.Y.Cty. 1955). Whether exhibition of a photograph in a "rogues' gallery" carries with it the clear implication that the person portrayed is a criminal is a question for the jury. Colpitts v. Fine, 42 A.D.2d 551, 345 N.Y.S.2d 45 (1st Dept. 1973). Thus appellant has alleged the elements of a claim for libel.[11] Kent v. Buffalo, 36 A.D.2d 85, 319 N.Y.S.2d 305 (4th Dept. 1971) (broadcast of innocent plaintiff's picture as one of robbers held to constitute libel); Gow v. Bingham, 57 Misc. 66, 107 N.Y.S. 1011 (Sup.Ct. Kings Cty. 1907); Owen v. Partridge, 40 Misc. 415, 82 N.Y.S. 248 (Sup.Ct. N.Y.Cty. 1903).
 
 
 30
 For the above reasons we affirm in part, reverse in part, and remand for proceedings consistent with this opinion. Costs will be awarded to appellant.
 
 
 
 *
 Of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 The statutory right to privacy set forth in N.Y. Civil Rights Law §§ 50-51 was enacted after the New York Court of Appeals refused to recognize a common law right of privacy. It merely protects against the unauthorized use of one's name or picture for trade purposes
 
 
 [2]
 Prior to 1962, § 51(1) of the Civil Practice Act provided a one-year limitations period for actions against sheriffs and coroners, and § 49(2) of that Act provided a three-year period for actions against constables. The purpose of the short statute for claims against sheriffs was to protect the sureties on the sheriff's bond, required by N.Y. County Law § 403 and N.Y. Public Officers Law § 11. See Ingo v. Koch, 127 F.2d 667, 672-73 (2d Cir. 1942); Morris v. Van Voast, 19 N.Y. 283 (1838). Prior to 1962, a vacancy in the office of sheriff was, in the absence of an undersheriff, to be filled by a coroner of the county, who was similarly required to file a bond. See N.Y. County Law § 651 and historical notes thereunder. In Cumming v. Brown, 43 N.Y. 514 (1871), the court held that the section covered deputy sheriffs as well. In Kirschberg v. Coghlan, 62 Misc. 629, 115 N.Y.S. 1078 (Sup.Ct.App. Term 1909), on the basis of a statutory provision extending all provisions relating to the taking and restitution of property by sheriffs to the taking and restitution of property by marshals, the court held that the predecessor of Civil Practice Act § 51(1) applied to the marshal of the City of New York in a suit for wrongful levy under a warrant of attachment. Marshals were also required to file a bond. Municipal Court Act § 294, Laws 1902, ch. 580 (now N.Y. City Civ.Ct. Act § 1604)
 
 
 [3]
 In 1962 the new Civil Practice Law and Rules combined former § 51(1) with former § 49(2), which provided a three-year period of limitations for actions against constables a special type of "peace officer," see N.Y. Criminal Procedure Law § 1.20(33)(q) authorized to be hired with full constabulary powers only in towns of second class that lack a police department, see N.Y. Town Law § 20(1)(b). In recommending the merger of the two sections into one, the Second Report to the Legislature stated:
 "It is not clear why an action against a sheriff or coroner should be barred in one year, while an action against a constable for the same liability should be barred in three. Under the proposed provision, actions against all the stated officers, upon a liability for an official act, except for the non- payment of money collected upon execution, are governed by a one-year period."
 2d Report Leg.Doc. No. 13, at 72 (1958) (emphasis supplied). Thus the limitations period governing claims against constables, as incorporated in § 215(1), appears to have been extended in order to provide protection for sureties. There is no indication that the Legislature intended, by merging these Civil Practice Act provisions into a single section, to extend the benefits of § 215(1) to other law enforcement officers not specifically listed.
 
 
 [4]
 This rule appears to be one developed and applied primarily by the Fourth Department of the Appellate Division. To our knowledge, no other New York appellate court has passed on the question. Both Derlicka v. Leo, 281 N.Y. 266, 22 N.E.2d 367 (1939), and Sandak v. Tuxedo Union School District No. 3, 308 N.Y. 226, 124 N.E.2d 295 (1954), relied on specific statutory language incorporating the requirements of §§ 50-e and 50-i, rather than on a general rule of law. The extent to which the principle is authoritatively part of New York law is therefore unclear. In view of our disposition of this appeal, however, it is unnecessary for us to decide this question
 
 
 [5]
 N.Y. General Municipal Law § 50-i provides that no personal injury or property damage action may be maintained against a city, county, town, village, fire district or school district unless (1) a notice of claim is served on that public corporation within 90 days after the claim arises, pursuant to § 50-e, (2) 30 days have elapsed since such service and the claim has been denied or neglected, and (3) the action is commenced within one year and 90 days after the happening of the event on which the claim is based
 
 
 [6]
 For example, in O'Hara v. Sears Roebuck & Co., 286 App.Div. 104, 142 N.Y.S.2d 465 (4th Dept. 1955), the court held that in an action for false arrest and malicious prosecution brought against city police officers, no notice of claim was required to be filed with the city as a predicate for suit because there was no statutory provision requiring the city to indemnify the officers for such action. See also Widger v. Central School District No. 1, 20 A.D.2d 296, 247 N.Y.S.2d 364 (4th Dept. 1964); Hawkins v. Dominy, 18 Misc.2d 221, 185 N.Y.S.2d 310 (Sup.Ct. Nassau Cty. 1959); Kawar v. Martin, 25 Misc.2d 3, 206 N.Y.S.2d 62 (Sup.Ct. Onondaga Cty. 1959), aff'd, 12 A.D.2d 876, 210 N.Y.S.2d 68 (4th Dept. 1961)
 
 
 [7]
 In 1974, for instance, two different sections labelled § 50-j were added to N.Y. General Municipal Law. The first § 50-j, requiring that "every city, county, town, village, authority or agency" indemnify its police officers for their torts and that actions against the municipal body or police officer be commenced subject to the provisions of N.Y. General Municipal Law § 50-i, applies only to claims arising on or after May 17, 1974, and therefore is inapplicable here. The second requires a city to indemnify its police officers and members of its corrections department for damages assessed against them in federal courts on condition that, among other things, the employee's action was not in violation of the governing case law of the United States at the time the damages were sustained. The section applies only to claims arising on or after June 15, 1974. Presumably the conditions placed on indemnity under the second § 50-j create an exception to the unconditional indemnity provisions of the first § 50-j. Thus, even for claims arising after the effective dates of the two §§ 50-j, police officers other than those listed in the two sections would appear to be protected only by the general limitations provisions of N.Y.C.P.L.R. §§ 213-215
 In 1976, N.Y. General Municipal Law § 50-k was enacted, requiring cities of over 1,000,000 population to indemnify their police officers for damages assessed in federal court, provided the officer, within 10 days of receiving the complaint, requests the corporation counsel to assume control of his representation. The section applies to all such claims, regardless of whether the act on which the claim is based occurred prior to the effective date of the provision, so long as the notification of corporation counsel requirement is satisfied. Even when that requirement is not satisfied, indemnification is provided for any judgment entered against the officer in federal court provided the corporation counsel has served as attorney of record and trial counsel. Presumably § 50-k also constitutes an exception to the general indemnity provisions of the first § 50-j.
 
 
 [8]
 For the same reason we need not reach appellant's contention that the statute of limitations in a Bivens action should be tolled until the date on which the government becomes free to disclose the basis for probable cause for the arrest or search
 
 
 [9]
 The question of the scope of § 1985(3) is the subject of a considerable controversy among the circuits. Compare, e. g., Harrison v. Brooks, 519 F.2d 1358 (1st Cir. 1975); Phillips v. Trello, 502 F.2d 1000 (3d Cir. 1974); Hughes v. Ranger Fuel Corp., 467 F.2d 6 (4th Cir. 1972); Westberry v. Gilman Paper Co., 507 F.2d 206 (5th Cir. 1975), vacated as moot pending rehearing en banc; Glasson v. City of Louisville, 518 F.2d 899 (6th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); Dombrowski v. Dowling, 459 F.2d 190 (7th Cir. 1972); Means v. Wilson, 522 F.2d 833 (8th Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976) (adopting Westberry ); Lopez v. Arrowhead Ranches, 523 F.2d 924 (9th Cir. 1975). See also Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66 (2d Cir. 1976), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798. We need not enter into this dispute here
 
 
 [10]
 Appellant apparently admits that all pendent tort claims except his defamation claims are barred by N.Y.C.P.L.R. § 215(3)
 
 
 [11]
 At the same time, however, we should note that New York recognizes an absolute or qualified privilege for law enforcement officials, depending on the circumstances, and requires a showing of actual malice before a plaintiff will be allowed to prevail in a defamation action. Morton v. Knipe, 128 App.Div. 94, 112 N.Y.S. 451 (1908). As the court stated in Morton, to prevail a plaintiff must show that the officers operated "under motives other than those of duty." See generally 13 A.L.R.2d 897; 35 N.Y. Jur., Libel & Slander § 106 (1964). Compare Bivens, 456 F.2d 1339, 1348 (2d Cir. 1972) (on remand) (scope of privilege in Bivens action)