**Rodney TAYLOR, Appellant,**

**v.**

**Thomas MAYONE, Sheriff of Ulster County, Deputy John Doe and Sergeant John Doe, Appellees.**

No. 699, Docket 79–2078.

United States Court of Appeals, Second Circuit.

Submitted Jan. 24, 1980.

Decided June 27, 1980.

Rodney Taylor, pro se.

Milton Thurm, New York City (Greenhill & Speyer & Thurm, New York City, on the brief), for appellees.

Before MULLIGAN, VAN GRAAFEILAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

This appeal raises the question whether a federal civil rights suit against a sheriff may be dismissed pursuant to New York Civil Practice Law and Rules ("CPLR") § 215(1), which provides that certain actions against a sheriff must be commenced within one year. Rodney Taylor brought this action *pro se* in the United States District Court for the Southern District of New York on August 29, 1978 alleging that on January 16, 1977, two deputy sheriffs, under color of state law, deprived him of his civil rights. He sought redress under 42 U.S.C. § 1983. The district court, finding CPLR § 215(1) applicable to the acts alleged, granted defendants' motion to dismiss on the ground that the action was brought more than one year after the acts complained of. We reverse on the ground that the action is governed by the three-year provision of CPLR § 214 and was timely commenced.

## I

Taylor's complaint, as filed, alleges simply that on January 16, 1977, the defendant deputies "under the color of Law and while on duty did Fire one bullet from a service revolver at the Plaintiff and proceed to and thereby Endanger the life of the plaintiff by an unlawful and unexplained act of Attempted Murder." With the complaint, Taylor submitted copies of certain papers he had prepared for state court and administrative proceedings, including several *pro se* petitions for state writs of habeas corpus, a complaint to the State Division of Human Rights and a motion for relief pursuant to CPLR Article 78. The district court relied on these papers in fleshing out the events leading up to the act complained of. The picture that emerges is as follows.

In December 1976 Taylor was a student at the State University at New Paltz, New York and had an apartment in New Paltz; his legal residence was his parents' home in Rosendale, New York, some ten miles away. On December 26, 1976, having spent Christmas with his parents, Taylor returned to his New Paltz apartment to find that it had been searched on December 25, allegedly without a warrant, by New Paltz policemen who apparently had removed certain articles and left an itemized receipt taped to the wall. Shortly thereafter Taylor learned from University officials that a warrant had been issued for his arrest on a charge of rape in the first degree. Taylor telephoned state police headquarters and received verification that such a warrant was outstanding. Taylor did not turn himself in, however, and apparently some two weeks passed without execution of the warrant.

On the evening of January 15, 1977, Taylor was at his parents' home in Rosendale. At about 11:00 p. m., Taylor drove his father's van from Rosendale to New Paltz. At approximately 4:00 a. m. on January 16, he was still in New Paltz and, at that time apparently some distance away from the van, was stopped by an off-duty Rosendale policeman who stated that he intended to hold Taylor for the state police. When Taylor asked to see a warrant, the policeman answered that the state police were on their way with a warrant. Taylor fled. After he "lost" the policeman, Taylor returned to the van and drove toward his home in Rosendale.

Just outside New Paltz, a patrol car, lights flashing, began following the van. As Taylor approached Rosendale, he saw a sheriff's patrol car, lights on, parked on the left side of the road. After he passed the latter patrol car, Taylor heard a bullet hit the driver's side of the van. It is the firing of this shot that Taylor contends violated his constitutional rights.[1]

On August 29, 1978, Taylor commenced this suit under § 1983, seeking injunctive relief and $350,000 in damages, against New Paltz Sheriff Thomas Mayone and two of his deputies who were denominated "John Doe." The complaint alleges that the shot was fired by one of the defendant deputies, and that Mayone is joined as a defendant because the deputies were in his employ at the time. Papers submitted with the complaint, however, asserted that in 1975, in connection with an investigation of the death of Taylor's brother, Mayone had posted a photograph of Taylor in the police station "for so-called security reasons" and thereby "created a hazardous at-titude" toward Taylor and generated disre-spect for his life.[2]

Defendants moved to dismiss the complaint on the ground, *inter alia*,[3] that the action is time-barred under CPLR § 215(1), which provides a one-year limitation on suits against a sheriff for acts, other than the collection of money upon an execution, performed in his official capacity. The district court concluded that § 215(1) was applicable and, since the action had not been commenced within one year of the January 1977 driving-shooting incident, granted the motion to dismiss. This appeal followed.

## II

Section 1983 does not contain its own statute of limitations. Thus the "most appropriate" period of limitations provided by state law must be applied. *Board of Regents v. Tomanio*, —— U.S. ——, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 (2d Cir. 1980).

1. After the shot, fearing that his life was in danger, Taylor drove on for about one-half mile before stopping in front of a hotel. He then honked the horn and, when he saw a patrol car approaching, lay across the seat of the van with his hands on top of his head. Officer Goldfluss of the New Paltz Police Department opened the passenger door, pointed a gun at Taylor, pulled him onto the sidewalk and hand-cuffed him.

 Officer Goldfluss arrested Taylor for several traffic violations and drove him to the New Paltz police station. While Taylor was at the police department, a state police officer entered with the rape warrant. Allegedly written across the top of the warrant were the words "hates cops" and "knows karate." Neither Goldfluss nor the state police officer who presented the warrant was responsible for firing the shot. Taylor was arraigned on the rape charge later that day. At a preliminary hearing the complaining witness changed her story, and Taylor was never tried for rape. He was, however, tried and convicted of reckless endangerment in connection with the driving-shooting incident.

2. Taylor's complaint against Mayone, read literally and by itself, seems to rely solely on a theory of vicarious liability rather than person-al responsibility. If it were so limited, no viable claim would be stated against Mayone since it is established that "[t]he doctrine of *respondeat superior* is unavailable as a basis for imposing liability under § 1983; there must be some showing of *personal responsibility*." *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir. 1977). *Cf. Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978). However, reading all of the papers submitted with the complaint in the light most favorable to the claim of this *pro se* plaintiff, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 48, 78 S.Ct. 99, 101–102, 103, 2 L.Ed.2d 80 (1957), we infer that the charge against Mayone is grounded not merely on a theory of vicarious liability, but on the theory that the deputies, as Mayone's employees, were giving effect to his policies and instructions.

3. Defendants also contended that the action was barred by CPLR § 215(3), which provides a one-year period for suits for assault. The district court properly rejected this contention. *See Ortiz v. LaVallee*, 442 F.2d 912 (2d Cir. 1971) (§ 214(2) applied to § 1983 suit alleging assault by prison officials).

---

---

Our Court traditionally has held that suits brought in federal district courts in New York under § 1983 are governed by the three-year period of limitations provided by CPLR § 214(2) for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute." *Quinn v. Syracuse Model Neighborhood Corp., supra;*[4] *Meyer v. Frank,* 550 F.2d 726, *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977); *Kaiser v. Cahn,* 510 F.2d 282 (2d Cir. 1974); *Ortiz v. LaVallee,* 442 F.2d 912 (2d Cir. 1971); *Romer v. Leary,* 425 F.2d 186 (2d Cir. 1970); *Swan v. Board of Higher Education,* 319 F.2d 56 (2d Cir. 1963). None of these cases, however, involved actions against sheriffs or their deputies, or required consideration of the possible applicability of CPLR § 215(1) relied on below.

CPLR § 215(1) provides that an action against a sheriff, coroner or constable, upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty, except the nonpayment of money collected upon an execution

shall be commenced within one year.[5] In a wide variety of cases the courts have held this section applicable when the sheriff has acted in good faith.[6]

Prior to the decision below there were two district court opinions which had considered whether the one-year period of § 215(1) could bar a claim asserted against a sheriff under § 1983. *See Paschall v. Mayone,* 454 F.Supp. 1289 (S.D.N.Y.1978), and *Carrasco v. Klein,* 381 F.Supp. 782 (E.D.N.

**4.** *But see* footnote 6 of the *Quinn* opinion, noting that recent developments suggest the applicability of New York's six-year statute for actions not otherwise provided for, on the ground that § 1983 itself does not impose liabilities but merely provides additional remedies. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *State v. Cortelle Corp.,* 38 N.Y.2d 83, 85, 378 N.Y.S.2d 654, 655, 341 N.E.2d 223 (1975). Since neither the three-year nor the six-year period would bar Taylor's claim, we leave further exploration of this possibility for another day. *See also Board of Regents v. Tomanio, supra,* —— U.S. at ——, n. 4, 100 S.Ct. at 1790, n. 4, noting the absence in that case of a contention that a statute longer than three years applied and thus finding it unnecessary to review the Second Circuit's rule, "established a number of years ago," that New York's three-year statute "governs § 1983 actions brought in Federal District Court in New York."

**5.** This provision applies to deputy sheriffs as well as sheriffs. *Cumming v. Brown,* 43 N.Y. 514 (1871) (interpreting N.Y.C.P.A. § 51(1), the predecessor of CPLR § 215(1)). We hereinafter use "sheriffs" to include sheriffs and deputies.

**6.** By its own terms the statute does not place a one-year limitation on all actions against a sheriff, but only on those based on acts (or omissions) for which he may be liable and which he has performed in his official capacity. In the leading case of *Ingo v. Koch,* 127 F.2d 667, 671 (2d Cir. 1942), this Court stated:

[T]he result is that we have a sort of heaven-purgatory-hell classification: (1) Conduct which is lawful and not actionable, because entirely within the sheriff's official authority. (2) Unlawful conduct, actionable, but sufficiently close to being "official" so that suit is barred if not brought within one year. (3)

Unlawful conduct, so far from being "official" that, for purposes of the statute of limitations, it is treated like that of an ordinary nonofficial person.

The question is thus whether the conduct charged is sufficiently close to being official that it may be barred by the special one-year provision. Judicial interpretation of the section has held that the answer to this question depends largely on the intent of the official—that is, on whether the officer had a good faith belief that he was acting within his official capacity:

Did the sheriff, although acting unlawfully and therefore rendering himself liable, intend in good faith to carry out his official duties, or did he know that he was acting outside his official authority?

*Ingo v. Koch, supra,* 127 F.2d at 672–78, and New York cases cited therein; *Paschall v. Mayone,* 454 F.Supp. 1289 (S.D.N.Y.1978); *Carrasco v. Klein,* 381 F.Supp. 782 (E.D.N.Y.1974).

The question of good faith or intent is, of course, a factual one, and if crucial facts are in dispute, it is appropriate to postpone any ruling on the statute of limitations defense until after the trial. *Ingo v. Koch, supra,* 127 F.2d at 678–79; *Paschall v. Mayone, supra; Carrasco v. Klein, supra.* If, on the other hand, the plaintiff does not raise a bona fide issue as to malice or intent on the part of the sheriffs, the issue may be decided on motion:

If the evidence as to the defendants' intentions had been uncontroverted, the judge himself could have decided the issue (and, in fact, if he had failed to do so, we could now decide it). . . .

*Ingo v. Koch, supra,* 127 F.2d at 679. In all three of these cases, *Ingo, Paschall* and *Carrasco,* the courts found triable issues on the question of good faith.

Y.1974). Both courts denied motions to dismiss based on § 215(1), but stated that the action could be barred by § 215(1) if the facts proven at trial demonstrated good faith on the part of the sheriff. We are not aware of any New York State case, however, that has held § 215(1) applicable to federal civil rights claims, and the court in *Paschall v. Mayone* relied in part on the intimation of our Court in *Regan v. Sullivan*, 557 F.2d 300 (2d Cir. 1977), that § 215(1) might be available to a sheriff to bar a § 1983 action. In *Regan*, however, the defendants who asserted the bar of § 215(1) were federal officials rather than the state law enforcement officers specified in § 215(1). The Court pointed out that § 215(1) applied only to sheriffs, coroners and constables and not to federal officials, and held the section inapplicable. Since no sheriffs, coroners or constables were parties to *Regan*, the question whether § 215(1) would bar an action as to those persons was not decided.

▮ The purpose of § 215(1) and the treatment of other short periods of limitations with similar purposes lead us to the conclusion that actions brought against sheriffs under § 1983 should be governed by the three-year statute of limitations, notwithstanding the one-year provision of § 215(1). The shortness of the period of limitations in § 215(1) is related to the requirement that sheriffs post surety bonds against dereliction in the performance of their official duties. Section 215(1) is designed to limit the period during which the sheriff's surety is vulnerable to a call for indemnification, by requiring that the suits against sheriffs for acts in their official capacity be brought quickly. *See Regan v. Sullivan, supra,* 557 F.2d at 305 n. 2 (the purpose of § 215(1) is "to protect the sureties on the sheriff's bond, required by N.Y. County Law § 403 and N.Y. Public Officers Law § 11"); *Ingo v. Koch,* 127 F.2d 667, 679 (2d Cir. 1942); *Dixon v. Seymour,* 62 A.D.2d 444, 405 N.Y.S.2d 320 (3d Dep't 1978) (describing the history of § 215(1)).

▮ Section 50–i of the General Municipal Law serves a similar purpose. That section provides that any action against a municipality for injury to person or property by reason of the negligence or wrongful act of any of its officers, agents or employees must be commenced within one year and ninety days of the event complained of.[7] The section has been held applicable to actions against the individual officers, agents or employees themselves, *Hahin v. City of Buffalo,* 41 Misc.2d 1018, 246 N.Y. S.2d 917 (Sup.Ct.1964), and has been said to be applicable whenever such individuals have a right to indemnity from the municipality.[8] *Sorge v. City of New York,* 56 Misc.2d 414, 288 N.Y.S.2d 787 (Sup.Ct.N.Y. Co.1968). Thus § 50–i generally serves to limit the municipality's duty to respond, or indemnify, by requiring that certain actions be speedily brought. In *Regan v. Sullivan, supra,* this Court recognized the similarity of the purposes of CPLR § 215(1) and General Municipal Law § 50–i as follows:

> The reason for the short statute governing actions against sheriffs, constables

---

7. Section 50–i provides in pertinent part as follows:

> 1. No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof, including volunteer firemen of any such city, county, town, village, fire district or school district or any volunteer fireman whose services have been accepted pursuant to the provisions of section two hundred nine-i of this chapter,

> unless, . . . and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based.

8. Two recently enacted sections of the General Municipal Law explicitly provide for indemnification of certain municipal employees for liability arising within the scope of their duties and, in addition, specify that such cases are subject to the time limitation contained in § 50–i. *See* § 50–j (actions against police officers, other than New York City police, for negligent act or tort) (effective 1974); § 50–k (civil actions against New York City employees) (effective 1979).

and coroners is to protect their sureties, and the reason certain other officers are given the benefit of the municipal limitations statute is to protect the indemnifying municipalities.

557 F.2d at 307.

Section 50–i has never, to the best of our knowledge, been applied to bar a federal civil rights action commenced more than one year and ninety days, but less than three years, after the event complained of. *See Quinn v. Syracuse Model Neighborhood Corp., supra; Newman v. Pool*, No. 78 Civ. 1088 (S.D.N.Y. June 1, 1979); *Hodas v. Lindsay*, 431 F.Supp. 637 (S.D.N.Y.1977). In *Quinn v. Syracuse Model Neighborhood Corp., supra*, we stated as follows:

We hold, [despite the City's reliance on § 50–i], that the § 214(2) limitations period governs suits under § 1983, regardless of the legal status of the defendant under New York law. In *Monell, supra*, the Supreme Court held that a municipality is a "person" for purposes of § 1983. Since 1963, this court has consistently stated that § 214(2) applies in § 1983 suits against "persons," *see Swan v. Board of Higher Education*, 319 F.2d 56 (2d Cir. 1963), even though § 50(i)(1) includes, within its terms, city officers, agents and employees. To create different limitations periods for two similarly situated classes of defendants would create a distinction without a difference, and would engender unnecessary confusion for litigants and judges alike. Thus, we hold that the most appropriate limitations period for suits against municipalities under § 1983 is that which has been heretofore applied in actions against individual municipal officers and employees.

613 F.2d at 449. Courts that have stated that § 50–i, rather than CPLR § 214(2), applied to a § 1983 action have done so only when *neither* provision would bar the action, *e. g., Davis v. Krauss*, 478 F.Supp. 823 (E.D.N.Y.1979), or when *both* would bar the action, *e. g., Phillips v. Justy*, No. 79 Civ. 4042 (S.D.N.Y. March 31, 1980).

The New York cases tend to support the interpretation that § 50–i will not bar a civil rights action. Several New York cases have recognized that the difference between a § 1983 claim and a tort claim precludes application of other limiting provisions of the General Municipal Law to bar a § 1983 claim. *E. g., Cooper v. Morin*, 50 A.D.2d 32, 36, 375 N.Y.S.2d 928 (4th Dep't 1975) (holding failure to file notice of claim pursuant to § 50–e did not bar § 1983 action, citing this Court's decisions in *Romer v. Leary* and *Swan v. Board of Higher Education, supra*). One New York court has referred to this holding in *Cooper* in ruling that a plaintiff asserting constitutional claims is entitled to "at least" the period provided in § 50–i, and noting that it is not clear that if such an action were brought after one year and ninety days it could be barred under § 50–i. *Drake v. City of Rochester*, 96 Misc.2d 86, 93–94, 408 N.Y.S.2d 847 (Sup.Ct.1978).

Given the facts that (a) the courts have refused to apply § 50–i to bar a § 1983 action, despite its purpose of limiting the municipality's liability for indemnification, (b) no New York State court has held that § 215(1) may be applied to bar a civil rights action, and (c) the purposes of § 215(1) and § 50–i are indistinguishable, we hold that the appropriate statute of limitations for § 1983 actions against sheriffs and their deputies is the three-year provision of CPLR § 214(2) rather than the one-year provision of § 215(1).

### III

As mentioned in Part II, CPLR § 215(1) applies only where a sheriff has performed his duties in good faith. *See note 6 supra* and authorities cited therein. In an action under § 1983, a public official may be entitled to a defense of qualified immunity if he can establish that he acted in good faith. *See Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). We note that in concluding that § 215(1) was applicable to the present action, the district court determined that the facts presented by Taylor did not suggest that these defendants had acted with malice or in bad faith. This determi-

nation would not resolve the merits of Taylor's § 1983 claim, however, even if the record had been fully developed below.[9] While the facts as to good faith or malice under § 215(1) will obviously be relevant to a determination of whether the qualified immunity defense is available, it appears that the tests under CPLR § 215(1) and under § 1983 are different.

 The test under § 215(1) focuses principally on whether the sheriff believed in good faith that he was pursuing his official duties. Under § 1983, however, immunity will be unavailable as a defense if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights" of the plaintiff, "or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . ." *Procunier v. Navarette, supra*, 434 U.S. at 562, 98 S.Ct. 855, 860, 55 L.Ed.2d 24, quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). A determination by the district court on the question of good faith for purposes of CPLR § 215(1) is therefore not dispositive of the question of qualified immunity for purposes of § 1983. The latter question remains open for determination on remand.

Reversed and remanded.

---

**9.** The defendants moved for dismissal in lieu of answering. They have the burden of raising the issue of good faith as a defense, *Gomez ·v. Toledo,* —— U.S. ——, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). On appeal, the parties have presented several factual allegations, apparently not raised below even by affidavit, which they may wish to present on the qualified immunity issue on remand. Defendants contend, for example, that they received a radio transmission advising them that a New Paltz police car was in pursuit of the van, that they heard the patrol car siren, and that they

recognized the driver of the van "as the Appellant who was wanted on the warrant in connection with a rape charge." Taylor's brief to this Court suggests that there is evidence that the driver of the patrol car which commenced to follow him just outside New Paltz knew nothing of the rape warrant and began to follow the van solely because of several traffic violations, including speeding, failure to keep to the right side of the road, failure to signal a left turn, and failure to yield. Taylor further claims that the pursuing patrolman neither used his siren nor radioed ahead.