**Brian O'HAGAN, Plaintiff,**

v.

**Hector L. SOTO, Defendant.**

**80 Civ. 1192.**

United States District Court,
S. D. New York.

April 8, 1981.

Robert Devine, New York City, for plaintiff.

Grubbs, Alio & Donovan, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

On January 6, 1979, plaintiff, Brian O'Hagan, was arrested by defendant, Officer Hector L. Soto of the Haverstraw, New York, Police Department, and charged with possession of stolen property. On February 10, 1980, plaintiff began this action under 42 U.S.C. § 1983 claiming that his arrest and subsequent treatment violated various provisions of the United States Constitution. Defendant has now moved for summary judgment. For the reasons given below, the motion is granted in part and denied in part.

### The Facts

On the evening of Friday, January 5, 1979, plaintiff was approached by a detective Freeman of the Haverstraw Police Department and told to report to the Haverstraw police station on the following day.[1] Saturday, January 6, 1979, plaintiff voluntarily appeared at the Haverstraw police station as requested. After waiting sometime between ten minutes and half an hour, plaintiff was approached in the police station lobby by defendant, and asked to step into defendant's office. Plaintiff entered defendant's office and sat down. Plaintiff was informed by defendant that he was under arrest for possession of stolen property. Plaintiff was then told that since his father is a police officer, and defendant is a police officer, "Police officers extend each other certain courtesies." Plaintiff's Deposition of November 26, 1980 at p. 13. At this point plaintiff requested permission to make a telephone call, and this permission was denied. Defendant also refused to display an arrest warrant upon request. Defendant then presented plaintiff with a statement implicating third parties in the theft for which plaintiff was being arrested. Defendant stated that if plaintiff signed this statement, the charges against plaintiff would be dropped. Plaintiff refused to sign the statement. He was then told by defendant that failure to sign the statement would result in plaintiff going to jail. Plaintiff again refused to sign the statement. He was then allowed to make a telephone call.

Plaintiff used this telephone call to contact his father, who arrived at the police station "shortly after that." Plaintiff's Deposition of November 10, 1980 at p. 16. After plaintiff's father arrived, defendant renewed his offer concerning the statement implicating third parties in the theft. At this point plaintiff and his father were together, and, in fact, were never separated during the balance of the time spent at the Haverstraw police station. Plaintiff again refused to sign the statement, at which point the Hon. Timothy P. Walsh, Village Justice of the Village of West Haverstraw, was summoned to the police station in order to arraign plaintiff. By plaintiff's own testimony, Justice Walsh arrived at the police station approximately two hours after plaintiff first encountered defendant. At this point, according to plaintiff, his father had already spent approximately an hour at the police station. Plaintiff was arraigned, informed of the charges against him, and released on his own recognizance. The charges against plaintiff were subsequently dismissed.

1. For the purposes of this motion, the court will assume the truth of all facts alleged in the complaint or testified to by plaintiff at his deposition.

### Discussion

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 to recover damages for various alleged violations of his constitutional rights. The penultimate paragraph of the complaint alleges three specific deprivations of constitutional rights stemming from the facts as alleged. These claims will be considered in the order found in the complaint, along with certain other possible claims arising out of the fact alleged in the complaint.

Plaintiff's first constitutional claim alleges deprivation of his right "to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States." Complaint ¶ 24. The analysis of such a claim is fairly straightforward if the arrest in question took place pursuant to a valid arrest warrant. The Supreme Court has recently declared that a 1983 action is not available against a state law enforcement official for incorrectly arresting someone when the arrest took place pursuant to a valid arrest warrant. In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1978) (*Baker*), the plaintiff was arrested after being stopped for a traffic violation. A routine check revealed an outstanding warrant, apparently for plaintiff's arrest. Instead, the warrant was actually for plaintiff's brother. The confusion arose from the plaintiff's brother's use of a forged driver's license at the time when he was arrested. Thus plaintiff's brother passed himself off as the plaintiff, and so when he failed to appear in court after release, a bench warrant was naturally issued for the person whom police believed was plaintiff, but instead was plaintiff's brother. As one might imagine, the plaintiff, protested his arrest for his brother's crime in strenuous terms. Unfortunately it took six days for the Dallas police to determine they had the wrong brother. Plaintiff sued pursuant to Section 1983, alleging violation of this Fourteenth Amendment right not to be deprived of his liberty without due process of law.

The Supreme Court rejected this claim, observing:

By virtue of its "incorporation" into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.... The probable cause determination "must be made by a judicial officer either before or promptly after arrest." ... Since an adversary hearing is not required, and since *the probable cause standard for pretrial detention is the same as that for arrest,* a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial.

443 U.S. at 142–143, 99 S.Ct. at 2694 (citations omitted, emphasis added). The Court went on to say that "[a]bsent an attack on the validity of the warrant under which he was arrested", plaintiff's constitutional claims would have to arise from actions by law enforcement officials which occurred subsequent to his arrest. 443 U.S. at 143–144, 99 S.Ct. at 2694.

■ Therefore, if the arrest warrant which prompted plaintiff's arrest in the instant case is valid, plaintiff's only cognizable 1983 claims must derive from defendant's actions subsequent to the arrest. However, plaintiff has sought to cast doubt on the validity of the arrest warrant. Plaintiff's counsel has repeatedly alleged, in papers submitted to the court and during hearings on this motion, that the arrest warrant offered by defendant is a backdated forgery created specifically to aid in the defense of this action. In support of this allegation, plaintiff has submitted a letter from Justice Walsh, the judge who signed the arrest warrant as well as the judge who presided at plaintiff's arraignment, to plaintiff's counsel. This letter is dated November 25, 1980, and reads in its entirety:

According to the Court's records there was no warrant issued for the arrest of Brian P. O'Hagan on the charge of Crimi-

nal Possession of Stolen Property in the Third Degree during the years of 1978 or 1979.

This letter appears to have been signed by a clerk or secretary on behalf of Judge Walsh. The November 25, 1980, letter caused this court to order the deposition of Judge Walsh in an effort to resolve the status of the arrest warrant.

Judge Walsh was deposed on December 9, 1980. He reiterated that his files did not contain a copy of the arrest warrant, although such copies are normally retained. However, he positively identified his signature on the original. Walsh Deposition at p. 3. While he admitted to not having an independent recollection of this particular warrant, he plausibly accounted for this lack of recollection by explaining that he issues warrants weekly, and has "no independent recollection because there are so many of them." *See* Walsh Deposition at 6. Most importantly, after identifying his signature, he rejected the possibility that the document in question had been backdated as "impossible", Walsh Deposition at p. 8, or that his signature on the original could be a forgery. *See* Walsh Deposition at p. 8.

The controversy over the arrest warrant confronts this court with a situation in which allegations by plaintiff have been rebutted by sworn testimony obtained by defendant. The judge who signed the warrant has unequivocally identified his signature, and rejected the possibility of backdating or forgery. Without some further evidence to contradict Judge Walsh's sworn testimony, plaintiff may not avoid summary judgment on this issue by merely alleging that the arrest warrant is a fabrication. He must come forward with some evidence of his own to support his allegation. *See Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972); *Dressler v. MV Sandpiper*, 331 F.2d 130, 132–134 (2d Cir. 1964). His failure to do so results in this court's conclusion that the arrest warrant involved here is genuine. The existence of such a warrant disposes of any 1983 claim which plaintiff might possess with respect to his arrest.

The court now shifts its attention to those claims involving defendant's alleged violations of plaintiff's constitutional rights subsequent to his actual arrest. As presented in the complaint, plaintiff's second claim is an alleged deprivation of his right "to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States." Complaint at ¶ 24. To the extent that this claim is an attempt to invoke the Sixth Amendment right "to be informed of the nature and cause of the accusation," it is factually insufficient on the basis of plaintiff's own testimony. Plaintiff testified in his deposition that defendant "said [plaintiff] was under arrest for possession of stolen property" at the very start of the meeting in defendant's office. This is not a situation where a person is arrested, told he is charged with one crime, and subsequently finds out that he is charged with another, more serious crime. *See U. S. ex rel. Lopez v. Zelker*, 344 F.Supp. 1050, 1055 (S.D.N.Y.), *affirmed without opinion*, 465 F.2d 1405 (2d Cir. 1972).

Moreover, as plaintiff's own testimony shows, he was arraigned less than three hours after his arrest. The charges were read to him by Judge Walsh, who also questioned plaintiff about his understanding of the charges. *See* Plaintiff's Deposition at pp. 18–19. Under these circumstances, this court has no problem in concluding, as a matter of law, that the purpose of the Sixth Amendment's notice provision has been served. The Supreme Court has described the operation of the Sixth Amendment in the following fashion:

The Sixth Amendment includes a compact statement of the rights necessary to a full defense... The rights of notice, confrontation and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice... In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it.

*Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975) (citations omitted). There is no way to characterize the three hour interval between plaintiff's arrest and arraignment as an obstruction to his ability to mount a defense.

Plaintiff's third claim in the complaint alleges deprivations of "life, liberty, or property without due process of law," as well as a denial of "the right to equal protection of the laws," in violation of the Fourteenth Amendment. Complaint at ¶ 24. The equal protection claim may be summarily dismissed. Plaintiff does not allege a set of facts which, even if proved, would constitute a denial of equal protection. He is not a member of any recognized suspect class, and he fails to even allege any sort of disparate treatment relative to some other individual or group. As for the due process claim, it appears to be another "catch all" allegation. To the extent that plaintiff's due process claim rests upon alleged deprivation of some "liberty" interest in connection with his arrest, it is disposed of above, in the course of considering the preclusive effect of a valid arrest warrant on certain of plaintiff's constitutional claims.

This court's inquiry is not, however, concluded because all claims specifically put forth in the complaint have been dealt with. Certain factual allegations contained in the complaint, although not expressed as specific constitutional claims, could conceiveably serve as the basis for suit under Section 1983. Two such claims will be addressed: (1) defendant's alleged failure to give plaintiff the various warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (*Miranda*) and (2) defendant's alleged refusal to allow plaintiff to contact counsel combined with continued interrogation of plaintiff after he had requested permission to contact counsel.

As far as this court can discover, no district court in this Circuit has ever passed on the legal sufficiency of a 1983 claim based upon alleged failure to give *Miranda* warnings. However, every other federal court ever confronted with this argument, including three federal appellate courts, has rejected the argument as a matter of law.[2] This court is constrained to agree. *Miranda* requires, as a mechanism to enhance judicial supervision of the criminal justice system, that criminal defendants be warned of certain constitutional rights possessed by all criminal defendants. Nothing in the *Miranda* opinion even suggests the elevation of the warning itself to the level of a constitutional right. The warnings are clearly in aid of a number of crucial rights, but the Supreme Court has already created the mechanism for enforcing the required warnings—suppression of statements and evidence gathered in violation of the warning requirement. There is no reason or support for subjecting law enforcement officials to civil liability for failure to give *Miranda* warnings.

Plaintiff's allegations of deprivation of his Sixth Amendment right to counsel are significantly more troubling. Paragraph 12 of the complaint alleges a refusal by defendant "to permit the plaintiff ..., to make a telephone call." Paragraph 15 of the complaint alleges a wilfull and knowing refusal by defendant to permit "the plaintiff ... to contact and/or consult an attorney prior to interrogation." Obviously, this claim only survives as a factual matter until plaintiff was admittedly allowed to make a call to his father. At that point plaintiff could have called an attorney or asked his father to contact counsel. Nevertheless, assuming plaintiff had a right to counsel on the facts as described, he has clearly alleged a deprivation of the right during the one hour interrogation in defendant's office.

2. *See Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir. 1976); *Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir. 1968); *Davis v. Hudson,* 436 F.Supp. 1210, 1214 & n. 14 (D.S.C.1977); *Hampton v. Gilmore,* 60 F.R.D. 71, 81 (E.D. Mo.), *aff'd,* 486 F.2d 1407 (8th Cir. 1973); *Allen v. Eicher,* 295 F.Supp. 1184, 1185–86 (D.Md. 1969); *Ambrek v. Clark,* 287 F.Supp. 208, 210 (E.D.Pa.1968). *See also Chrisco v. Shafran et al.,* 507 F.Supp. 1312 (D.Del. February 11, 1981).

The question then becomes whether plaintiff's Sixth Amendment right to counsel had "attached" at the point when he was questioned in defendant's office just after his arrest. In determining whether the right to counsel has attached here, this court is required to follow the decisions of the Second Circuit, where applicable. In *United States ex rel. Robinson v. Zelker*, 468 F.2d 159 (2d Cir. 1972) (*Robinson*), a divided panel of the Second Circuit held that the right to counsel attached to a New York state criminal defendant when an arrest warrant was issued. As the *Robinson* Court described the issue there decided, it was "whether the issuance of a warrant of arrest under former Section 144 of the New York Code of Criminal Procedure" amounts to a sufficient initiation of proceedings to activate the right to counsel. *United States ex rel. Robinson v. Zelker, supra*, 468 F.2d at 160 (footnotes omitted). This question was answered in the affirmative, with one judge dissenting.

Former Section 144 of the New York Code of Criminal Procedure unequivocally provided that "[a] prosecution is commenced ... when a warrant of arrest is issued." This section has been repealed, and in fact, had already been repealed when *Robinson* was decided. *See United States ex rel. Robinson v. Zelker, supra*, 466 F.2d at 160 n.2. The commencement of local criminal actions in New York state is now governed by New York Criminal Procedure § 100.05 *et seq.* If anything, the new law reflects the legislative choice of an even earlier point in the criminal process to use as the point of commencement of the action. Under Section 100.05, an action is commenced, *inter alia*, with the filing of an information.[3] Such an information was filed in this case, because an arrest warrant was subsequently issued. Affidavit of Soto, Exhibits B, C. This court cannot honestly distinguish *Robinson* on the basis of Section

144's repeal. Apply the *Robinson* decision to this case would clearly result in a finding that the right to counsel had attached when plaintiff and defendant spoke in the latter's office.

■ At the same time, this court is aware that the continued vitality of the *Robinson* decision is unclear in the wake of the Second Circuit's decision in *United States v. Duvall, et al.*, 537 F.2d 15 (2d Cir. 1976) (*Duvall*). In *Duvall*, Judge Friendly, writing for a unanimous panel, distinguished *Robinson* on the basis of the New York statute, and went on to hold that the filing of a complaint pursuant to Fed.R. Cr.P. 3 does not automatically activate the right to counsel for *federal* defendants. Nevertheless, this court has found no Second Circuit authority, including *Zelker*, which explicitly casts doubt on *Robinson*'s use of state criminal procedure law to fix the point at which a criminal action commences in New York state. Thus this court must turn to New York law, and a reading of the applicable provisions of the current New York criminal procedure statute compels the conclusion that the right to counsel had attached when plaintiff was invited into defendant's office.

■ Plaintiff has testified in his deposition that he asked for counsel and was refused. Defendant has denied this allegation via a blanket denial of any unconstitutional post-arrest conduct contained in his affidavit filed in support of the instant motion. Thus, the alleged deprivation of plaintiff's Sixth Amendment right to counsel constitutes a disputed issue of material fact, and can not be decided at this juncture. Admittedly, this court is unaware of any case in which money damages have been awarded for deprivation of the right to counsel. In addition, damages for the alleged deprivation here would seem to be minimal, since the alleged deprivation last-

---

**3.** New York Criminal Procedure Law Section 100.05 reads in pertinent part:

    ... A criminal action can be commenced ... in a local criminal court, by the filing therewith of a local criminal court accusatory instrument namely:

    1.  An information; or
    2.  A simplified information; or
    3.  A prosecutor's information; or
    4.  A misdemeanor complaint; or
    5.  A felony complaint.

ed, at maximum, about an hour and a half, during which the interrogation allegedly continued without counsel or a clear waiver of counsel. Obviously this court cannot assume a waiver without considerably more showing than has been made here. *See United States v. Duvall, et al., supra,* 537 F.2d at 22–23. The Sixth Amendment claim of denial of the right to counsel has thus been fairly presented and may not be disposed of through summary judgment.[4]

For the reasons just given, Paragraph 15 of the complaint is retained. The balance of the complaint is dismissed with prejudice.

---

[4]. This decision should not be construed as in any way approving or condoning plaintiff counsel's letter to this court dated March 11, 1981.

Counsel's remarks were both *ex parte* and improper.