Brian O'HAGAN, Plaintiff,

v.

Hector L. SOTO, Defendant.

No. 80 Civ. 1192 (CBM).

United States District Court, S.D. New York.

May 2, 1983.

See also 523 F.Supp. 625.

Robert Devine, Hollis, N.Y., for plaintiff.

Barry, McTiernan & Moore by Michael F. Close, New York City, for defendant.

## OPINION

MOTLEY, Chief Judge.

The simple episode underlying this case, a police interrogation in the absence of counsel, has given rise to somewhat complicated and unusual proceedings over a three year period, including two trials and a remand by the Second Circuit Court of Appeals. At the first trial before this court, the plaintiff, Brian O'Hagan, sought damages pursuant to 42 U.S.C. § 1983 (Supp. IV 1980) for violations of his sixth amendment right to counsel allegedly caused by the defendant, Hector Soto, a member of the Haverstraw, New York police department, during custodial interrogation in connection with a local burglary. The jury returned a verdict for the plaintiff and awarded him a total of $50,000 in damages. This court entered the judgment for plaintiff but later set aside the award of damages as excessive and referred the case to Judge Palmieri for a retrial on the issue of damages only. The retrial before Judge Palmieri resulted in an unusual form of judgment. Although Judge Palmieri instructed the jury on its option to award nominal damages, the jury chose to award no damages at all. Judge Palmieri thereafter discharged the jury and entered a judgment in favor of the plaintiff but without damages. On appeal, the Second Circuit remanded the case for clarification of the judgment. Noting that a judgment in favor of plaintiff without damages may be a judgment in no operative sense at all, the Second Circuit directed this court to clarify the ambiguities inherent in a judgment in favor of a party which entitles him to no relief whatsoever.

Defendant's counsel has now submitted a motion for judgment in favor of the defendant as well as a motion for attorneys' fees. Plaintiff appeared at the argument on defendant's motions but has submitted no opposition papers or cross-motions. As explained below, the court denies defend-

ant's motions and orders a second retrial on the issue of damages.

*Background*

In February, 1980, plaintiff brought a civil rights suit in this court against defendant Soto alleging violations of various constitutional rights which occurred when Soto arrested and interrogated O'Hagan on the charge of criminal possession of stolen property in violation of N.Y. Penal Law § 165.-40 (McKinney 1975). The criminal charge against O'Hagan was subsequently dismissed. Defendant moved for summary judgment and this court granted that motion with respect to all claims except plaintiff's claim that he had been denied his sixth amendment right to counsel during the custodial interrogation. *O'Hagan v. Soto,* 523 F.Supp. 625 (S.D.N.Y.1981). The surviving claim was subsequently tried to a jury.

At the first trial, O'Hagan testified that on the evening of January 5, 1979, a detective from the Haverstraw police department told him to report to the police station the next day. O'Hagan complied with this request and presented himself the next day at the police station. There he was met by Officer Soto, who informed O'Hagan that he was under arrest for possession of stolen property. O'Hagan claimed that Soto thereafter informed him that all charges would be dropped if he signed a statement implicating three other youths in the alleged crime. O'Hagan refused to sign and was thereafter interrogated by Soto for a period which O'Hagan estimated to be approximately one to one and one-half hours. On three or four occasions during the questioning, O'Hagan requested and was denied permission to call his father or an attorney. Finally, O'Hagan was allowed to call his father, who arrived at the station approximately fifteen minutes later. Some fifteen minutes later O'Hagan was arraigned before Judge Walsh and was released on a $1,000 bond. Soto did not attend the first trial.

The jury found that plaintiff's sixth amendment right to counsel had been violated, returned a verdict in favor of plain-

tiff, and awarded him $25,000 in compensatory damages and $25,000 in punitive damages. Defendant moved pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure for, *inter alia,* a judgment notwithstanding the verdict and a reduction by remittitur of the damages award. This court denied defendant's motion for a judgment notwithstanding the verdict on the ground that defendant's arguments were directed to the legal sufficiency of plaintiff's claims and had been considered and rejected by this court in its opinion denying defendant summary judgment. *See O'Hagan v. Soto,* No. 80 Civ. 1192, slip op. at 5 (S.D.N.Y. Jan. 22, 1982). This court then stated that it would "once again address the legal questions raised . . . in the interest of clarifying its position and making a final and fair disposition of this matter," *id.* at 5. The court once again concluded that "plaintiff made out a colorable claim for Sixth Amendment violations and that it was properly entertained," *id.* at 8. This court did conclude, however, that the two awards of damages were far in excess of any evidence adduced at trial. This court also concluded that apparently, the jury intended the awards as "penalt[ies] which the jury assessed, resulting from a conclusion on its part that defendant's failure to appear demonstrated . . . an acknowledgement of the unjustness of his cause," *id.* at 12. The court offered plaintiff the option to remit all but $1,500 of the damages awarded or to submit to a new trial on the issue of damages only. Plaintiff refused the remittitur.

Apparently unconvinced by this court's rejection of his arguments made in connection with the motion for a judgment notwithstanding the verdict, defendant filed an objection to the limitation of the retrial to the issue of damages only. This court rejected those arguments again and filed an order on March 3, 1982 explicitly limiting the retrial to the issue of damages. A jury trial was conducted on April 1, 1982, before Judge Palmieri.

At the retrial, O'Hagan recounted the testimony already summarized above. For the first time, Soto appeared and testified.

According to Soto, the interrogation lasted only sixteen minutes. Soto produced the police department blotter which indicated that O'Hagan arrived at 4:55 p.m. and that O'Hagan's father arrived only sixteen minutes later at 5:11 p.m. Soto also testified that he promptly granted O'Hagan's request to telephone his father.

At the conclusion of the trial, Judge Palmieri invited the parties to make their motions. Defendant then "renewed his objection to sending only damages to the jury" (Transcript of Trial held on April 1, 1982 ("Tr.") at 88). Judge Palmieri denied that motion on the ground that he was "bound by the order of remittitur . . . to submit to the jury the issue of damages" (Tr. at 89). Apparently undaunted, counsel moved to dismiss plaintiff's case on the ground that it was legally insufficient and to enter a judgment in favor of the defendant (Tr. at 90). Plaintiff responded by noting that this argument had failed on at least two prior occasions before this court (*id.*), and Judge Palmieri responded to defendant's argument by ignoring it.

Consistent with this court's order dated March 3, 1982, Judge Palmieri submitted only the issue of damages to the jury and instructed the jurors on their option to return only nominal damages. However, the jury returned no damages at all. Defendant immediately seized this opportunity to once again move for judgment in favor of the defendant and this time also moved for attorneys' fees on the ground that he was now the prevailing party.[1] Judge Palmieri denied the motion for judgment and instructed the parties to file their application for attorneys' fees before this court.[2] With respect to the judgment, Judge Palmieri stated, "[S]ince the plaintiff won on the issue of liability before Judge Motley, got a retrial on the damage issue after the order of remittitur, and since the plaintiff has recovered no damages whatsoever in the retrial of the damage issue before me, I

think the fair way to dispose of the case is to direct a judgment for the plaintiff without costs . . . ."[3]

On appeal, the Second Circuit concluded that the ambiguities inherent in this form of judgment warranted a remand for clarification. The Court of Appeals noted that a judgment in favor of the plaintiff but without the award of even nominal damages, which normally accompanies an adjudication of a denial of a constitutional right in the absence of compensatory damages, may mean that the judgment in favor of the plaintiff entered by Judge Palmieri may be a judgment in no operative sense at all. The Second Circuit thereafter vacated the judgment entered by Judge Palmieri and remanded the case to this court.

*Discussion*

At the outset, the court notes that there are actually two judgments in this case. On July 6, 1981, this court entered a judgment in favor of O'Hagan awarding him $50,000 in compensatory and punitive damages. By opinion dated January 22, 1982, the court offered the plaintiff the option to remit all but $1,500 or to submit to a new trial on the issue of damages only. By refusing the remittitur, plaintiff did not reopen the judgment in its entirety. The combination of these events left intact the July 6, 1981 judgment on the issue of liability. This court's order dated March 8, 1982 limited the retrial to damages only. On appeal, the Second Circuit did not decide the merits of the sixth amendment issue. It vacated only the judgment entered by Judge Palmieri on the issue of damages. Thus, of the two judgments in this case, the judgment entered on July 6, 1981 survives on the issue of liability.

Although defendant acknowledges that the judgment on the issue of liability remains intact,[4] he moves, yet again, for a judgment notwithstanding the verdict. Moreover, although he advances not a sin-

---

1. *See* Transcript of Proceedings After Jury Verdict at 2.

2. *Id.* at 11.

3. *Id.* at 7.

4. *See* Transcript of Oral Argument dated March 18, 1983 at 16.

gle new argument, he reasserts his claims that the retrial should not have been limited to the issue of damages and that plaintiff's cause of action is legally insufficient.[5] These arguments were rejected by the court on the merits on at least two prior occasions. *See O'Hagan v. Soto,* No. 80 Civ. 1192 (S.D.N.Y. April 5, 1981, and January 22, 1982). At this point in these proceedings, the court believes it unnecessary to review the merits of these claims yet again:

> There is a feeling that the various phases of a lawsuit should be consistent one with another; that the same matter should not be the subject of repetitious, time-consuming hearings; that public confidence must be preserved in the judicial system by adhering to a decision once made. These attitudes have been reflected in numerous cases which have involved the "law of the case" doctrine.

Vestal, *Law of the Case: Single Suit Preclusion,* 1967 Utah L.Rev. 1 (quoted in J. Cound, J. Friedenthal, & A. Miller, *Civil Procedure, Cases and Materials* 1153 (2d ed. 1977)).

The law of the case doctrine is rooted in principles of judicial economy and administrative efficiency. The doctrine expresses the practice of courts generally to give continuing effect to a ruling made earlier in the same litigation. *See Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981) (Friendly, J.) ("The law of the case will be disregarded only when the court has a 'clear conviction of error' with respect to a point of law on which its previous opinion was predicated . . ."); *Riley v. MEBA Pension Trust,* 586 F.2d 968, 970 (2d Cir.1978) (doctrine of law of the case relates to the practice of the courts to generally refuse to reopen what has been decided); *Zdanok v. Glidden Company, Durkee Famous Foods Division,* 327 F.2d 944, 953 (2d Cir.) ("[W]here litigants have once battled for the court's decision, they should be neither required, nor without good reason permitted, to battle for it again"), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

The doctrine is not inexorable or absolute but is a discretionary doctrine, *see Stolin v. Citizens Casualty Co. of New York,* 614 F.2d 301, 312 (2d Cir.1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *First National Bank of Hollywood v. American Foam Rubber Corp.,* 530 F.2d 450, 453 n. 3 (2d Cir.1976), which "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. California Prune & Apricot Grower,* 3 F.2d 896, 898 (S.D.N.Y. 1924) (L. Hand, J.); *see Schupak v. Califano,* 454 F.Supp. 105, 114 (E.D.N.Y.1978) (while the law of case doctrine does not bind court with finality of res judicata, the "discretion of a court to review earlier decisions '. . . is one which should be used sparingly, so as not to undermine . . . the basis of the law of the case rule'") (quoting *United States v. Fernandez,* 506 F.2d 1200, 1206 (2d Cir.1974)).

The Fifth Circuit has stated the policy considerations underlying the doctrine as follows:

> The "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could . . . [repeatedly] compel a court to listen to criticisms on [its] opinions or speculate of chances from changes in its membership," and that it would be impossible for . . . [a court] "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent . . . [opportunity]" thereof.

*Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir.1978) (quoting *White v. Murtha,* 377 F.2d 428, 431 (5th Cir.1967) (footnotes omitted)). The court then went on to set guidelines for the exercise of judicial discretion:

> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by . . . [a] court

---

5. Defendant's Memorandum dated December 23, 1982 at 2 n. 1.

establishes the "law of the case" and must be followed in all subsequent proceedings in the same case ... unless ... [1] controlling authority has since made a contrary decision of the law applicable to such issues, [2] the decision was clearly erroneous and would work manifest injustice.

*Morrow v. Dillard,* 580 F.2d at 1270 (quoting *White v. Murtha,* 377 F.2d at 431). *See also Fogel v. Chestnutt,* 668 F.2d at 109 (stating that law of the case controls unless there is a clear error of law on which the previous opinion was predicated).

In the instant case, defendant claims that *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which was decided after this court entered its judgment on the issue of liability, mandates a judgment in his favor. In *Harlow,* the Supreme Court examined the issue of the scope of immunity available to senior aides and advisers of the President of the United States in the context of a suit for damages based on their official acts.[6] The Court held that such officials are generally entitled to a qualified immunity. 102 S.Ct. at 2734. In so holding, the Court broadened the scope of *qualified* immunity by stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 102 S.Ct. at 2738. Defendant asserts that this court should now apply this standard retroactively and enter a judgment in his favor.

"Qualified" or "good-faith" immunity is an affirmative defense. *Harlow,* 102 S.Ct. at 2737; *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *see also Taylor v. Mayone,* 626 F.2d 247, 253 (2d Cir.1980). Thus, the defendant has the burden of pleading it in his answer. *See* Fed. R.Civ.P. 8(c) (defendant must plead any

"matter constituting an avoidance or affirmative defense"); *Gomez,* 446 U.S. at 640, 100 S.Ct. at 1924 ("It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith"); *see also Taylor v. Mayone,* 626 F.2d at 253 ("a public official may be entitled to a defense of qualified immunity if he can establish that he acted in good faith"). In this case, however, defendant never raised that affirmative defense in his answer, nor was the issue of qualified immunity ever actually tried to the jury. Notwithstanding these omissions, he now seeks to have this court apply retroactively the new standard enunciated by the Supreme Court with respect to the affirmative defense of qualified immunity to a case in which, after a full trial on the merits, a final judgment as to liability has already been entered and in which this affirmative defense was never in issue. Essentially, defendant seeks to assert the affirmative defense of qualified immunity under a new standard for the first time three years after the commencement of this action and have this court retrospectively impose that new legal standard to a completed factual history which was never elicited with even the former standard of qualified immunity guiding and shaping its course. The court concludes that because the affirmative defense of qualified immunity was never raised in this case, *Harlow* is inapplicable, and the judgment in favor of plaintiff is not clearly erroneous and does not work a manifest injustice. *Morrow v. Dillard,* 580 F.2d at 1270; *see also Fogel v. Chestnutt,* 668 F.2d at 109.

The troublesome aspect of this case is Soto's testimony at the retrial, which appears to draw the question of liability once again into issue. Officer Soto testified that the entire interrogation lasted only sixteen minutes and that plaintiff's request to call his father was promptly granted.

---

**6.** The court notes that the Fifth Circuit has held that *Harlow* is applicable to police officers.

*See Saldana v. Garcia,* 684 F.2d 1159 (5th Cir. 1982).

Soto's counsel believes that this testimony and the jury's award of no damages indicate that the jurors considered no constitutional violation to have occurred. Again, however, it is important to recognize the procedural context in which defendant now moves for judgment. After this court denied defendant's motion for a judgment notwithstanding the verdict, defendant filed objections to the limitation of the retrial to the issue of damages only. This court considered and rejected those objections and filed an order expressly limiting the retrial to damages. Having lost before this court on the question of the scope of retrial, defendant then sought to circumvent this court's order by introducing testimony designed to draw into issue what this court had already ruled to be finally decided.[7]

■ If this unseemly conduct is not by itself sufficient reason to deny defendant's motion, other aspects of this case provide further reason for its denial. Defendant Soto did not attend the first trial; that, it appears, was a significant factor leading to the jury's decision against him. This court has noted that the jury appears to have considered defendant's absence at the first trial to be an indication of bad faith on his part and an acknowledgement of the unjustness of his cause. *See O'Hagan v. Soto,* No. 80 Civ. 1192, slip op. at 12 (S.D.N.Y. Jan. 22, 1982).[8] Defendant decided not to attend the first trial, claiming that he was ill. Yet he never produced a doctor's certificate. Defendant is not entitled to use a proceeding before this court as a practice trial at which to test the sagacity of questionable trial tactics. Nor is he entitled to profit from the knowledge that his failure

to appear was a fundamental and egregious error by then correcting that error by appearing and testifying with respect to an issue already decided in his absence.

The salutary policies of the law of the case doctrine are rooted in concepts of finality and repose. The wisdom of those policies in promoting efficient judicial administration are seldom more evident than in the instant case. Our judicial system would cease to function effectively if every obstinate litigant were permitted to object to the court's rulings at every opportunity, to obdurately renew arguments already fully considered and rejected by the court, and to doggedly circumvent procedural constraints placed on legal issues by the court. The goal of our legal system is to resolve disputes within a procedural framework that imposes order on what might otherwise become an unruly debate and not to allow recalcitrant litigants to triumph at the expense of the integrity of the judicial process. Having repeatedly transgressed these procedural constraints, defendant's counsel seeks yet again to have this court enter judgment in his favor. That motion is denied. Since only a prevailing party may recover attorneys' fees under 42 U.S.C. § 1988 (1976), defendant's motion for attorneys' fees is also denied.

■ Turning to the task of clarifying the judgment as to damages, the court believes that the appropriate measure is to order a second retrial on the issue of damages. Judge Palmieri explicitly instructed the jury that at a minimum, it was required to return an award of nominal damages. The jury then rejected this clear instruction and

---

**7.** During oral argument on the instant motions, counsel for defendant admitted that he intended to relitigate the issue of liability. (*See* 3/18/83 Tr. at 11 ("Had the plaintiff accepted the remittitur and had judgment entered, of course there never would have been a second trial. We never would have had the opportunity to expose what we think is [plaintiff's] lie ...."). When the court explained that the retrial was limited to damages, counsel responded: "But how can the Court ignore convincing and compelling evidence right before it?" (3/18/83 Tr. at 12). Counsel seems to be argu-

ing that although he violated this court's order limiting the retrial to damages, this court should nevertheless forgive that breach because of the fruits of his disobedience. The court rejects this argument as patently meritless.

**8.** *See also* the comments of Judge Palmieri, "Judge Motley told me that she felt one of the reasons why the jury returned [the] verdict against him in the first trial was because he failed to appear" (4/1/82 Tr. at 8).

awarded no damages at all. The only reasonable interpretation of that verdict is that the jury reached and decided for a second time the issue of liability, and decided that issue against the plaintiff. Judge Palmieri then discharged the jury. The Court of Appeals concluded that Judge Palmieri discharged the jury without a proper verdict. Such a result is tantamount to a mistrial.

■ The jury's consideration of the issue of liability was improper for two reasons. First, the jury disregarded this court's order expressly limiting the retrial to the issue of damages. Second, the jury in effect reversed the jury at the trial before this court. Strong considerations rooted in the seventh amendment persuade this court that such a reversal is not to be allowed. *See, e.g., Akermanis v. Sea-Land Service, Inc.,* 688 F.2d 898, 902 (2d Cir.1982) ("Maintenance of the jury system as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of a right to a jury trial should be scrutinized with the utmost care.") (quoting *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)). Here, there is a serious question as to whether plaintiff's seventh amendment right was abridged since the first jury's finding of fact on the issue of liability was, in effect, reversed by the second jury. For seventh amendment purposes, this court sees no viable distinction between the case where a court disturbs a jury's findings and where another jury, acting beyond the limited purpose for which it was convened, invades the findings of a first jury.

Under these circumstances, the court concludes that the appropriate remedy is a second retrial on the issue of damages. The court is reluctant to burden the taxpayer and the judicial system with another retrial, especially since defendant's culpable failure to obey this court's order limiting the scope of the first retrial appears to have contributed significantly to the mistrial before Judge Palmieri. However, an examination of the record of the trial before Judge Palmieri indicates that, in all probability, the jury went beyond its proper scope and reconsidered the issue of liability. The only remedy that would correct that error is a second retrial.[9]

In ordering a second retrial, the court emphasizes two points: 1) the scope of that trial is strictly limited to damages and the court will not tolerate obstinate attempts to reintroduce the issue of liability; 2) to the extent that the issue of liability may be practically coincidental with the issue of damages, the court intends to enforce the conceptual distinction by following the teaching of the Supreme Court that in the absence of compensatory damages, nominal damages of $1 will accompany an adjudication of a denial of a constitutional right. *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) and cases cited therein at n. 24.

The parties are hereby ordered to attend a pre-trial conference on May 5, 1983 at 10:00 a.m. in Courtroom 906.

---

**9.** Alternatively, the court could enter a judgment of nominal damages in favor of plaintiff. This would raise the interesting issue of whether the entry of a judgment of $1 where the jury found that no damages were to be awarded is an additur in violation of the Supreme Court's longstanding rejection of additur. *See Dimock v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935).

The court believes that in this case the entry of one dollar impermissibly "inserts into the judgment something beyond what the jury

found ...." *Akermanis,* 688 F.2d at 902. That is, what the second jury found was, in effect, a judgment in favor of defendant. To enter a judgment of $1 would reverse that judgment in violation of the seventh amendment. That the second jury's finding was in itself impermissible does not alter "the lawfulness of the technique," *id.,* since the fundamental seventh amendment issue is whether the court inserts something into the verdict beyond what the jury found not whether the jury's finding was erroneous.